**PRESTOLITE WIRE DIVISION,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 76–2037.

United States Court of Appeals,
Sixth Circuit.

Argued April 20, 1978.

Decided Jan. 31, 1979.

Eugene T. D'Ablemont, Kelley Drye & Warren, New York City, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Robert G. Sewell, N.L.R.B., Washington, D. C., Bernard Gottfried, Director, Region 7, N.L.R.B., Detroit, Mich., for respondent.

Before EDWARDS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This matter is before the court on petition of Prestolite Wire Division of Eltra Corporation (Prestolite) to review an order of the National Labor Relations Board issued June 24, 1976. Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f) (1976). The Board's order is reported at 225 NLRB No. 1 (1976). The Board has cross-petitioned for enforcement of the same order.

On May 28, 1975 the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) filed with the Board a petition for a representation election at Prestolite's plant in Rose City, Michigan. Following approval by the Regional Director of a Stipulation for Certification upon Consent Election, an election was conducted on July 3, 1975 among the company's production and maintenance employees. Of approximately 118 eligible voters, 114 voted, 59 in favor of the union and 55 against union representation.

On July 11, 1975 Prestolite filed objections to the election. The objections, eight in number, are appended to this opinion and concern, *inter alia*, alleged threats made by a union organizer, alleged misrepresentation by the union of the operation of Prestolite's bonus plan, claims that the union had falsely represented that it had obtained free dental and eye care in a bargaining contract in one of Prestolite's plants in Bay City, Michigan, and claims that the election itself had been improperly conducted by a Board agent. The objections were supplemented by ten affidavits from voting employees and one affidavit from the employer's director of employee communications, and by certain correspondence from the union which identified the union's "in-plant" organizers, some of whom were alleged to have participated in the misconduct.

An administrative investigation by an NLRB agent followed at which Prestolite made available to the agent eight additional affidavits relating to the same charges and given by Prestolite's supervisors and managers. *See* 29 C.F.R. § 102.69. While they have not been identified or made available, affidavits were also taken by the Board agents from other employees, organizers and representatives of the union.[1]

On September 11, the Regional Director issued a report and recommendation that the objections be overruled in their entirety without a hearing and that the union be certified as exclusive bargaining representative of the employees. On October 2, 1975 Prestolite timely filed with the Board in Washington its 73 exceptions to the report and recommendation. The exceptions referred in great detail to the findings and conclusions in the report and to the affidavits which had been filed with the Board agent.

On January 30, 1976 a three-member panel of the Board certified the UAW as the exclusive representative of the employees in the bargaining unit. The order and certification in paragraph 5 of its findings recited:

> The Board has considered the Regional Director's report, the Employer's exceptions and brief, and the *entire record* in this proceeding, and hereby adopts the findings, conclusions, and recommendations of the Regional Director. (Footnotes omitted.) (Emphasis added.)

Prestolite's subsequent refusal to bargain with the union and the order to bargain which followed frame the issues for judicial review in this court.

In its petition for review Prestolite complains both of the result reached on the merits by the Board and of the procedures employed to reach it, procedures which, it asserts, failed to follow the Board's own rules and resulted in unfairness amounting to a denial of due process.

---

1. The company made no effort to discover the identity of those affiants or the nature of their statements. *See generally NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). It also urged that if the Regional Director did not immediately set aside the election and schedule a new one, he should at the least set the matter down for hearing.

Prestolite asserts, and the Board does not deny, that the consent election was held pursuant to 29 C.F.R. § 102.62(b):

Where a petition has been duly filed, the employer and any individuals or labor organizations representing a substantial number of the employees involved may, with the approval of the regional director, enter into an agreement providing for a waiver of hearing and a consent election leading to a determination by the Board of the facts ascertained after such consent election, if such a determination is necessary. Such agreement shall also include a description of the appropriate bargaining unit, the time and place of holding the election, and the payroll period to be used in determining which employees within the appropriate unit shall be eligible to vote. Such consent election shall be conducted under the direction and supervision of the regional director. The method of conducting such election and the post election procedure shall be consistent with that followed by the regional director in conducting elections pursuant to §§ 102.69 and 102.70.

The procedures for the processing of objections to the election or to conduct affecting the results of the election are governed by 29 C.F.R. § 102.69, which provides in pertinent part:

(c) If objections are filed to the conduct of the election or conduct affecting the results of the election, . . . the regional director shall, consistent with the provisions of § 102.69(d), investigate such objections or challenges, or both. If a consent election has been held pursuant to § 102.62(b), the regional director shall prepare and cause to be served on the parties a report on . . . objections, . . . including his recommendations, which report . . . he shall forward to the Board . . ., any party may file with the Board . . . eight copies of exceptions to such report, with supporting brief if desired . . . . Immediately upon the filing of such exceptions, the party filing the same shall serve a copy thereof together with a copy of any brief filed on the other parties and

shall file copies with the regional director. . . . If no exceptions are filed to such report, the Board, upon the expiration of the period for filing such exceptions, may decide the matter forthwith upon the record or may make other disposition of the case. . . .

(d) The action of the regional director in issuing a report on objections . . . following proceedings under § 102.62(b) or § 102.67 . . . may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which, in the exercise of his reasonable discretion, he determines may more appropriately be resolved after a hearing, he shall issue and cause to be served on the parties a notice of hearing on said issues before a hearing officer. . . .

\* \* \* \* \* \*

(f) In a case involving a consent election held pursuant to § 102.62(b), if exceptions are filed, . . . and it appears to the Board that such exceptions do not raise substantial and material issues with respect to the conduct or results of the election, the Board may decide the matter forthwith upon the record, or may make other disposition of the case. If it appears to the Board that such exceptions raise substantial and material factural [sic] issues, the Board may direct the regional director or other agent of the Board to issue and cause to be served on the parties a notice of hearing on said exceptions before a hearing officer. . . .

Section 102.69(g) describes the record to be transmitted to the Board:

(g) The notice of hearing, motions, rulings, orders, stenographic report of the hearing, *stipulations, exceptions, documentary evidence,* together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the par-

ties, the decision of the regional director, if any, and the record previously made as described in § 102.68, *shall constitute the record in the case.* Materials other than those set out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision. Immediately upon issuance of a report on objections or challenges, or both, upon issuance by the regional director of an order transferring the case to the Board, or upon issuance of an order granting a request for review by the Board, *the regional director shall transmit the record to the Board.* (Emphasis added.)

Prestolite claims that it was not until after the Board's order of January 30, 1976 that it discovered that the Regional Director had not transmitted to the Board any of the 19 affidavits which the company had submitted to the investigating officer, nor, presumably, had he transmitted any of the other materials which had been gathered during the course of the administrative investigation. It therefore appears (and the Board does not deny) that the latter's order of January 30, 1976, did not, as stated therein, include a consideration of "the entire record in this proceeding," but was confined to a consideration of the Regional Director's report and recommendation and of the exceptions filed thereto by the company. This, the company contends, amounts at best to an abdication of the Board's responsibility to review the record made and at worst to a deprivation of due process.

For its part, the Board vigorously contends that the existing regulations do not require it to make a *de novo* review and that it may, in the exercise of its discretion, proceed to a decision without the transmission to it of the full investigative record.

Put another way, the Board insists that it may determine that no hearing is required without a direct review of the materials submitted to the Regional Director if it appears from the report and objections that no substantial and material factual issues exist which would require a hearing to resolve them. In this respect the Board relies upon the language of 29 C.F.R. § 102.69(d) and upon our decisions in *NLRB v. Wolverine World Wide, Inc.,* 477 F.2d 969, 971–72 (6th Cir. 1973); *NLRB v. Medical Ancillary Services, Inc.,* 478 F.2d 96, 97–98 (6th Cir. 1973); and *NLRB v. Tennessee Packers, Inc.,* 379 F.2d 172, 178 (6th Cir.), *cert. denied,* 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967).

While we reaffirm the viability of the decisions cited as holding that in a proper case, objections to an election may be resolved on the basis of an administrative investigation alone, we cannot agree that those cases justify the denial to petitioner of a hearing here.

■ Without expressly ruling that the Regional Director is invariably required under Section 102.69(g) to transmit to the Board all of the materials considered by him (although the language says "shall"), we think that the better practice is to do so and we are unable to fault the company for having failed to anticipate that this procedure would not have been followed here. It is true that subsection (g) does permit the party filing exceptions to "append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision." We cannot, however, construe this language to shift from the Regional Director to the petitioner the responsibility for assembling and transmitting the record. The mechanics for such a transmission are lacking and we believe that the Board's review would be more reliably facilitated by following the plain language of its rule. In addition, the petitioner would be entirely without power to transmit the employee affidavits which the investigating officer had obtained.

It is no doubt true that in a given case, as in *Tennessee Packers,* the objections themselves may be "shotgunned" and so lacking in factual detail that they may be denied both by the Regional Director and by the Board entirely without recourse to the administrative record. Here, however, the Director's report and recommendation referred not only to the affidavits and documentary evidence submitted by the petitioner, but also to affidavits and other evidence which were not made available to Prestolite and which neither it nor the Board has yet seen.[2] It is apparent to us that any fair consideration of the 73 objections filed by Prestolite would be impossible without review of the underlying documentation. As we stated in *NLRB v. Tennessee Packers, Inc., supra:*

> It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. . . . Mere disagreement with the Regional Director's reasoning and conclusions do [sic] not raise "substantial and material factual issues." This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof. (Citations omitted.)

379 F.2d at 178.

Applying the rule of *Tennessee Packers* we believe it is most apparent that the exceptions register far more than "mere disagreement with the Regional Director's reasoning and conclusions" and we are unpersuaded by the Board's assertion that the company had failed to present to it "specific assertions of error, substantiated by offers of proof."

It had to be apparent that serious factual disputes existed which could be resolved only by an evidentiary hearing, and which, if resolved in favor of Prestolite, could result in setting aside the election. This observation is especially true concerning the charges that the union agents had misrepresented the benefits it had obtained in one of petitioner's other plants.

Even if the failure of the Regional Director to transmit the record before him to the Board does not expressly violate his obligation under Section 102.69(g), the problems faced by the Board in its review and by this court in ours are vastly complicated by such a procedure.

We are, therefore, left with the dilemma of reviewing a decision of the Board without an adequate record because the Board itself had no such record before it.

The Regional Director, in making his report, relied upon evidence which was unavailable to petitioner and which has not been made available either to the Board or to us. His report makes factual determinations, credibility findings and dubiously-colored characterizations whose fairness and accuracy are impossible for either the Board or us to review. The potential for mischief in such a procedure must be altogether apparent. Our record is incomplete, as was the Board's, and we cannot consider its augmentation before us by petitioner's unilateral inclusion in the appendix of copies of the Prestolite affidavits a satisfactory substitute.

Where, over objection, the Board's certification is made without the benefit either of a hearing or of the full record compiled by and relied upon by the investigative officer, we believe we are justified in

---

**2.** It was impossible for the Board to have reconciled the report with the objections or, in our opinion, to have evaluated the probity of the objections without repair to the full administrative record.

taking that record as we find it, and in construing the well-pleaded factual assertions in Prestolite's objections most favorably to it. So viewed, the Board's decision to issue a certification must be considered an abuse of its discretion.

Accordingly, the Board's Petition to Enforce is denied, the certification set aside, and the cause remanded to the Board with directions to refer the matter for hearing before a hearing officer as provided in 29 C.F.R. § 109.69(f).

## EMPLOYER'S OBJECTIONS

1. On election day, July 3, 1975, at the beginning of the day shift work, approximately 7:05 A.M., an identified employee organizer for Petitioner addressed other employees with threat of offensive bodily contact if they did not vote for the Union and thereby coerced and intimidated eligible voters.

2. Petitioner's organizers stated to employees that certainly [sic] monthly bonus payments received by employees during April and May had been falsified by the Employer and had not been paid in accordance with the written bonus plan formula, and that bonus payments would cease after the election if the Union lost the election. Such statements were false and misleading to employees eligible to vote in the election, the monthly bonus payments were of vital concern to voting employees, and lack of knowledge of Petitioner's falsehoods and misrepresentations prevented Employer from making an effective reply. Petitioner's false and misleading statements had a significant impact on voting employees and prevented the Board from conducting the election under the laboratory conditions it requires.

3. Petitioner's organizers created and perpetuated an atmosphere of coercion and personal intimidation in soliciting employee signatures on Petitioner's authorization cards by telling individual employees that if the individual did not sign the card, then their signature would be forged and used by Petitioner. Such conduct by Petitioner's organizers prevented eligible voters from exercising their franchise under the laboratory conditions required in Board conducted elections.

4. Petitioner compensated employee organizers for Petitioner by providing expense money payments which exceeded expenses, which compensation was not disclosed to employees eligible to vote in the election.

5. An employee-organizer for the Petitioner made false and misleading statements to employees eligible to vote in the election regarding the existence of certain fringe benefits that Petitioner had achieved in bargaining for employees represented by Petitioner at an Eltra Corporation facility in Bay City, Michigan. Employees eligible to vote in the election were not and had no reason to be aware of the material facts which Petitioner's agent misrepresented, and the Employer was prevented from making an effective reply by lack of knowledge that the misrepresentations had occurred.

6. The Board Agent conducted the election improperly in permitting voters to congregate so that the ballot box could not be observed by the Agent or the designated Observers while groups of six to eight voters clustered within arms reach of the ballot box.

7. The Board Agent improperly conducted the election by permitting unnecessary and excessive talking, laughing and general noise creation by identified employee organizers for Petitioner while standing in line prior to voting near the voting booth.

8. The Board Agent improperly conducted the election by permitting a voter to exit the voting booth and approach and converse with Petitioner's Observer in view of other eligible voters who were waiting to cast ballots. This improper conduct, including that described in items six and seven above, prevented eligible voters from making a free and uncoerced choice at the polls and impaired the integrity of the election process.

EDWARDS, Chief Judge, dissenting.

The United Automobile Workers conducted an organizing campaign at Prestolite Division of Eltra Corporation's plant at Rose City, Michigan. It won an election as collective bargaining representative of the employees by a vote of 59 to 55. After the election the company filed objections to certification of the results on eight separate grounds, each of which was rejected by the Regional Director after an investigation in a report and recommendation to the NLRB.

Petitioner then presented detailed exceptions to the report and recommendation of the Regional Director, but did not attach sworn affidavits to support them. The National Labor Relations Board was convinced by the Regional Director's report and certified the UAW as collective bargaining representative. This resulted in the present petition for review by Eltra and cross-application for enforcement by the Board.

Petitioner's principal exceptions do not appear to me to dispute matters of fact, as opposed to the interpretation of the impact or the legal effect of the facts concerned. I am persuaded that the Regional Director's treatment of the objections was proper and that under this court's opinion in *NLRB v. Tennessee Packers, Inc.*, 379 F.2d 172 (6th Cir.), *cert. denied*, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967), the Board was entitled to reject Eltra's exceptions without a hearing.

In *Tennessee Packers* this court said:

In order to raise "substantial and material factual issues", it is necessary for a party to do more than question the interpretation and inferences placed upon the facts by the Regional Director. *N. L. R. B. v. National Survey Service Inc.*, 361 F.2d 199 (C.A. 7); *N. L. R. B. v. J. R. Simplot Company*, 322 F.2d 170 (C.A. 9); *Macomb Pottery Company v. N. L. R. B.*, 376 F.2d 450 (C.A. 7); *N. L. R. B. v J. J. Collins' Sons, Inc.*, 332 F.2d 523 (C.A. 7); *N. L. R. B. v. Sun Drug Co.*, 359 F.2d 408 (C.A. 3). It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing.

The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. *N. L. R. B. v. National Survey Service, Inc.*, supra; *N. L. R. B. v. J. R. Simplot Company*, supra; *Macomb Pottery Company v. N. L. R. B.*, supra. Mere disagreement with the Regional Director's reasoning and conclusions do not raise "substantial and material factual issues." This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof.

The purpose behind the rule which requires a hearing only when "substantial and material factual issues" are raised is to avoid lengthy and protracted proceedings, and eliminate unnecessary delays in certifying the results of an election. If a hearing is required to be held on all exceptions to an election or report of a Regional Director, it would unduly lengthen and prolong labor unrest, contrary to the very purposes of the National Labor Relations Act. The cases relied upon by respondent in support of its contention that it is entitled to a hearing, all deal with cases in which the court determined that "substantial and material factual issues" were raised, and therefore held that the Board erred in not ordering a hearing. *United States Rubber Company v. N. L. R. B.*, 373 F.2d 602 (C.A. 5); *N. L. R. B. v. Capital Bakers, Inc.*, 351 F.2d 45 (C.A. 3); *N. L. R. B. v. Joclin Mfg. Co.*, 314 F.2d 627 (C.A. 2); *N. L. R. B. v. Lord Baltimore Press, Inc.*, 300 F.2d 671 (C.A. 4); *N. L. R. B. v. Dallas City Packing Co.*, 230 F.2d 708 (C.A. 5); *N. L. R. B. v. Poinsett Lumber and Mfg. Co.*,

221 F.2d 121 (C.A. 4). In *N. L. R. B. v. Sidran,* 181 F.2d 671 (C.A. 5), cited by respondent, the Court could only have held that the Board erred in denying a hearing if "substantial and material factual issues" were raised.

Respondent's exceptions to the report of the Regional Director filed December 13th, as heretofore described, do not state specific objections or indicate that material factual issues exist. They do not clearly put in issue the correctness of the Director's findings, but merely attack the correctness of his conclusions and inferences drawn from the facts uncovered in his investigation. It was proper for respondent to question the conclusions of the Director, but to require a hearing it was incumbent upon it to state what evidence it would produce to establish that the conclusions were incorrect. Respondent fails to suggest any material facts which would be developed at a hearing. A hearing "would not deal with matters of factual proof but would serve only to permit argument which could as well have been presented in the writing itself." *N. L. R. B. v. J. R. Simplot Company,* supra.

*Id.* at 178.

In *NLRB v. O.K. Van Storage, Inc.,* 297 F.2d 74 (5th Cir. 1961), the Fifth Circuit said:

The National Labor Relations Act, as amended, declares that it is the policy of the United States to encourage establishment of the collective bargaining relationship; the Act then specifies the procedures by which the relationship is to be established. Nowhere in the Act is there a specific requirement that the Board conduct post-election hearings on objections to the conduct of elections; rather, it is implicit in the Act that questions preliminary to the establishment of the bargaining relationship be expeditiously resolved, with litigious questions reserved for the proceedings for review or enforcement of Board orders. The Board nonetheless makes it a practice to hold post-election hearings on objections to elections, but in keeping with the spirit of the

Act does so only when it appears that the allegations relied on to overturn the election have a basis in law and that there is evidence to support them. The opportunity for protracted delay of certification of the results of representation elections which would exist in the absence of reasonable conditions to the allowance of a hearing on objections is apparent. An objecting party who fails to satisfy such conditions has no cause for complaint when and if his demand for a hearing is denied.

*Id.* at 76. (Footnotes omitted.)

The majority's result in this case could turn out to be that the Board is required to review each set of such unsupported objections by detailed hearing procedures. The already egregious delay between election and ultimate certification in NLRB election cases could be lengthened to a decade or more by this process.

I would grant enforcement.