**FOTOMAT CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1742.

United States Court of Appeals, Sixth Circuit.

Argued April 17, 1980.

Decided Nov. 3, 1980.

Donald F. Woodcock, Calfee, Halter & Griswold, Cleveland, Ohio, for petitioner.

Elliott Moore, Marjorie S. Gofreed, Deputy Associate Gen. Counsel, Peter Winkler, N.L.R.B., Washington, D. C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, A. Diamond, Washington, D. C., for respondent.

Before ENGEL, MERRITT and KENNEDY, Circuit Judges.

ENGEL, Circuit Judge.

This labor dispute is before the court upon cross–petitions for enforcement and review of an order of the NLRB certifying Local 880 of the Retail Clerks International Union, AFL–CIO, as the collective bargaining agent for the employees of Fotomat who worked in its 26 kiosks located in shopping centers throughout the Cleveland metropolitan area.

The Board on July 17, 1975 conducted an election pursuant to a stipulation between Fotomat and the union. Because of the unique working condition of the employees who worked in a wide variety of locations, usually alone or with one or two others, it was agreed that the Board agent would travel an agreed route from location to location at fixed times to obtain employee votes, returning to most kiosks a second time in order to receive the votes of those on later shifts.

Of approximately 72 eligible voters, 40 voted for the union and 21 voted against the union. Fotomat timely filed seven objections relating to the conduct of the election. Objections 1, 5, 6, and 7 were overruled without a hearing, and Fotomat does not appeal this action. The Board ordered a hearing on Fotomat's objections 2, 3, and 4. Those objections are as follows:

2. Various union representatives, on the day of the election at various stores of the Employer, interfered with the conduct of the election by unlawfully coercing employees who were eligible to vote in the election by demanding that said employees remove notices from the Employer's bulletin boards and hand said notices to the union representatives under threat of legal action or other retaliation.

3. The National Labor Relations Board representatives, James M. Hehnen, John T. Stephens, Thomas J. Blabey, Joseph F. Mengel and Aleck J. Halvorsen, at various stores of the Employer, while conducting the election, interfered with the conduct of the election by demanding employees eligible to vote in the election remove notices from the Employer's bulletin board and/or removed such notices from the Employer's bulletin board and refused to permit the reposting of such notices and/or did not repost such notices during non–election periods, thereby belitting and denigrating the Employer before employees to the extreme prejudice of the Employer.

4. The National Labor Relations Board representatives, James M. Hehnen, John T. Stephens, Thomas J. Blabey, Joseph F. Mengel and Aleck J. Halvorsen, interfered with the conduct of the election at various stores by failing to maintain scheduled voting periods as set forth in the Stipulation for Certification Upon Consent Election, thereby depriving some employees of an opportunity to vote.

Following an evidentiary hearing, the hearing officer recommended that the objections be overruled in their entirety. Fotomat filed exceptions to the hearing officer's report and claimed that it had not received a fair hearing. Following consid-

eration of Fotomat's claims, the Board adopted the hearing officer's findings and recommendations, and certified the union as the employees' exclusive bargaining representative. The company refused to bargain with the union, setting the stage for the Board's order to bargain and petition for enforcement, and the company's petition for review of the Board's certification of the union. The most serious questions raised in Fotomat's appeal relate to the company's assertion that it did not receive a fair hearing on its objections to the conduct of the election.

## I.

■ Fotomat first claims that the hearing officer violated the Board's own regulations when he refused to require the General Counsel to furnish Fotomat with affidavits obtained from Fotomat employees after the General Counsel had used those same affidavits to impeach Fotomat's witnesses at the hearing. The hearing officer acknowledged in his report that the company should have been allowed to use the statements in question to rehabilitate the witnesses. The Board also admits in its brief that its own regulations required disclosure of these affidavits at the hearing.[1] Although it appears that the hearing officer erred in refusing examination and use of the statements, he sought to overcome the impact of his error by disregarding the General Counsel's initial use of the statements for impeachment purposes.[2]

1. 29 C.F.R. § 102.118 (1978) provides in pertinent part:

§ 102.118 Board employees prohibited from producing files, records, etc., pursuant to subpoena ad testificandum or subpoena duces tecum; prohibited from testifying in regard thereto; production of witnesses' statements after direct testimony.

(a)(1) Except as provided in § 102.117 respecting requests cognizable under the Freedom of Information Act, no ... officer or employee of the Board shall produce or present any files, documents, reports, memoranda, or records of the Board or of the general counsel,

\* \* \* \* \* \*

(b)(1) Notwithstanding the prohibitions of paragraph (a) of this section, after a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint under section 10(c) of the act, the trial examiner shall, upon motion of the respondent, order the production of any statement (as hereinafter defined) of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the administrative law judge shall order it to be delivered directly to the respondent for his examination and use for the purpose of cross-examination.

\* \* \* \* \* \*

(c) The provisions of paragraph (b) of this section shall also apply after any witness has testified in any postelection hearing pursuant to § 102.69(d) and any party has moved for the production of any statement (as hereinafter defined) of such witness in possession of any agent of the Board which relates to the subject matter as to which the witness

has testified. The authority exercised by the administrative law judge under paragraph (b) of this section shall be exercised by the hearing officer presiding.

The Board rules find support in section 10(b) of the National Labor Relations Act, which requires that an unfair labor practice hearing, "shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States." 29 U.S.C. § 160(b) (1976). Rule 613(a) of the Federal Rules of Evidence provides:

(a) Examining witnesses concerning prior statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

2. In a footnote to his report, the hearing officer wrote:

Following direct and cross examination, Counsel for the Region showed Bulk the affidavit which she gave in the administrative investigation of the objections. Apparently, in the affidavit Bulk indicated that the polls were open five to ten minutes. She explained the discrepancy between her affidavit and her testimony at the hearing by claiming that she was merely giving an estimate in the affidavit. After Counsel for the Region completed examination of Bulk, the Employer made another request to peruse Bulk's affidavit which was denied because the Employer was not engaged in cross examination. I am now convinced that this ruling denying the Employer an opportunity to peruse the affidavit *after* it was used for impeachment purposes was in error since it denied the Employer an opportunity to attempt to rehabili-

Essentially, what has occurred here, therefore, is that the hearing officer has failed to accord to the company the right to use pre–existing witness statements and, even more, has to this day refused to permit the company to examine those statements to determine whether they might rehabilitate the witness or otherwise favor the company's position. In such circumstances, the hearing officer's attempt to "unring the bell" by disregarding the statements is a particularly unsatisfying device, especially when the statements were neither made available to the company nor included in the record so that we could independently evaluate their potential impact. In this respect the error is not unlike that which occasioned our denial of enforcement of the Board's order in *Prestolite Wire Division v. NLRB*, 592 F.2d 302 (6th Cir. 1979). In *Prestolite*, the Regional Director investigated the company's objections to the election and recommended that the Board overrule the objections and certify the union without a hearing. The Regional Director never transmitted to the Board the record he had assembled during his investigation. The Board certified the union without the benefit of the Regional Director's record and without a hearing. We observed:

> Even if the failure of the Regional Director to transmit the record before him to the Board does not expressly violate his obligation under Section 102.-69(g), the problems faced by the Board in its review and by this court in ours are vastly complicated by such a procedure.

> We are, therefore, left with the dilemma of reviewing a decision of the Board without an adequate record because the Board itself had no such record before it.

> The Regional Director, in making his report, relied upon evidence which was unavailable to petitioner and which has

not been made available either to the Board or to us. His report makes factual determinations, credibility findings and dubiously–colored characterizations whose fairness and accuracy are impossible for either the Board or us to review. The potential for mischief in such a procedure must be altogether apparent. Our record is incomplete, as was the Board's, and we cannot consider its augmentation before us by petitioner's unilateral inclusion in the appendix of copies of the Prestolite affidavits a satisfactory substitute.

> Where, over objection, the Board's certification is made without the benefit either of a hearing or of the full record compiled by and relied upon by the investigative officer, we believe we are justified in taking that record as we find it, and in construing the well–pleaded factual assertions in Prestolite's objections most favorable to it. So viewed, the Board's decision to issue a certification must be considered an abuse of its discretion.

*Id.* at 306–07. *See also NLRB v. St. Francis Hospital of Lynwood*, 601 F.2d 404, 417 (9th Cir. 1979).

The affidavits which should have been disclosed at the hearing were taken from Fotomat employees Susan Bulk, Lisa Sheehan, Joyce Cobb, and Elaine Seme. The General Counsel used each affidavit to cross–examine the witness concerning the events which took place at the Fotomat kiosk where that witness voted. In each case it was clear error for the hearing officer to deny a request by Fotomat's counsel for access to the affidavit after it had been used for impeachment purposes. Under somewhat similar circumstances our court has at least twice refused to hold that such an error was harmless.

tate the witness' testimony. However, the Employer is not prejudiced since I do not rely upon Bulk's testimony after she had been shown her affidavit in the recommendations herein. The Employer also requested and was denied an opportunity to review affidavits given by employees Seme, Sheehan, Cobb, and Reid in the administrative investigation of the objections after the affidavits

had been shown to these witnesses and they were questioned relative to apparent inconsistencies between their affidavits and their testimony at the hearing. But in most part the issues raised were not relevant to the objections and, again, I do not rely upon any testimony given after the witnesses were shown copies of their affidavits in any recommendations herein.

In *NLRB v. American Federal of Television and Radio Artists*, 285 F.2d 902 (6th Cir. 1961), where the trial examiner refused to require the General Counsel to disclose pretrial statements of witnesses who testified at the hearing, our court remanded the cause to the Board with instructions to correct the procedural error. Indeed, in *Provincial House, Inc. v. NLRB*, 568 F.2d 8, 11 (6th Cir. 1977), our circuit applied the principles which the Board had enunciated in *Athbro Precision Engineering*, 166 NLRB No. 116 (1967), *enforced* 423 F.2d 573 (1st Cir. 1970), to hold that certain conduct of Board agents which impugned the Board's neutrality was sufficient to warrant a denial to enforce a bargaining order, even though there was no showing that the conduct had any decisive effect upon the result of the election.

It is especially difficult therefore to find the Board's conduct harmless, because it not only wrongfully denied the employer access to evidence to which it was entitled at the hearing on its objections, but also denied this court access to the material so that its potential prejudice could be weighed in the context of the hearing which took place. However, as much as we disapprove of this unfair procedure, a careful examination of the entire record fails to suggest any prejudicial effect upon the fairness of the election.

Most of the difficulties complained of arose because the election was conducted, by common consent, in Fotomat's 26 separate kiosks located in shopping center parking lots throughout the greater Cleveland area. This arrangement created circumstances which were at best awkward for the conduct of an election. For example, in one instance the balloting took place on the hood of the Board agent's car rather than in the kiosk. However, there was no suggestion from the proofs that this procedure, while perhaps irregular, was of any real importance. The employees were provided with a three–sided box to shield the ballot, and no employee testified to a belief that her ballot could be observed by others. There was no evidence to support the company's allegations that any employee was denied the opportunity to vote, or that the Board agents strayed in any meaningful way from the appointed voting schedule. The strongest evidence presented by the company on this point was one employee's statement that the Board agent remained at her location "About 5 minutes. Something like that."

The evidence did show, however, that union representatives preceded the Board agent by several minutes in many locations to observe the condition of the kiosk and objected to the fact that anti–union literature was posted in the kiosks. In some instances the union representatives asked the employees to remove the literature, and in some cases the Board agent required its removal. The company does not dispute that campaign literature may not be posted in a polling place during an election. There was, it is true, the one instance where testimony indicated that the Board agent allowed the employees to vote outside the kiosk but nevertheless required removal of the literature from the kiosk walls. Even in that instance, however, the testimony was conflicting.

■ In our judgment, the company's complaints about removal of this literature are without merit. It may be true, as the company claimed, that it was entitled to post the notices at all times when the election was not in progress. However, it is equally true that there is no evidence to show that the company made any effort to remove that material from the kiosks during the election. In fact, the presence of the literature during the election may have amounted to an unfair labor practice on the part of the company. We therefore see nothing wrong in the union representatives' effective objections to the presence of that material during the course of the election, or the Board agents' actions in removing the literature. If the company did not see fit to remove the material on its own initiative, we conclude that it has no right to complain of what transpired.

Without endeavoring to define a precise rule, it is sufficient for our purposes here to

observe that we fail to discern any way in which the outcome of the election might have even hypothetically been affected. The limited nature of the witnesses' testimony and the failure of the circumstances to suggest any set of facts from which the company might reasonably have further fortified their position by use of the statements persuade us that it would be a futile gesture to remand. The Board's acknowledgement of error largely dissipates any prophylactic effect upon the Board and is offset by the harm of further frustrating the plainly expressed will of the employees who voted in the election.

Fotomat also claims on appeal that, regardless of the procedural irregularities, its objections to the conduct of the election were meritorious, and that the Board therefore abused its discretion in certifying the election. As our foregoing discussion indicates, we reject this contention, as we find no merit in Fotomat's objections to the election.

## II.

█ Fotomat also claims that it was erroneously denied access to reports prepared by Board agents concerning the conduct of the election. The company claims that it was entitled to discover these reports both before the hearing under the Freedom of Information Act, and during the hearing under the Board's own regulations and the so–called "*Jencks* rule."

Our court has already considered the FOIA claim filed by Fotomat in this litigation. In *Fotomat Corp. v. NLRB*, 573 F.2d 959 (6th Cir. 1978), we affirmed the district court's grant of summary judgment in favor of the Board. Insofar as the company's petition for review seeks to relitigate the discoverability of that information under

the FOIA, the prior decision of our court is *res judicata*.

█ Fotomat's claim that it should have been allowed access to these reports during the hearing presents a more difficult question. In *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the Supreme Court ruled that a union official, accused of having filed a false non–communist affidavit, had a right to make the government produce pretrial statements of FBI informers, who testified at his criminal trial, for purposes of cross–examination. The Second Circuit applied the *Jencks* rule to NLRB unfair labor practice hearings in *NLRB v. Adhesive Products Corp.*, 258 F.2d 403 (2d Cir. 1958), and the Board adopted the reasoning of *Adhesive Products* in its decision in *Ra–Rich Mfg. Corp.*, 121 NLRB 700 (1958).

The Board's current regulations implement the *Jencks* rule in NLRB hearings. 29 C.F.R. § 102.118(c) (1978) provides that "after any witness has testified in any post-election hearing . . . and any party has moved for the production of any statement . . . of such witness in possession of any agent of the Board which relates to the subject matter as to which the witness has testified" the trial examiner shall order the production of that statement, or the relevant portions of the statement. The difficulty with the company's complaint here is that the material was initially demanded at a time when the company was not entitled to it. On the uncertain record before us, it is at best ambiguous whether the hearing officer in denying Fotomat's request for the material at this time also indicated that a timely request would be denied. In any event, there is no evidence on the record before us that the request was renewed at the appropriate time.[3] While we believe

---

3. The Board stated in its brief that "The company was . . . not entitled to production of [the agents'] memoranda until they had given testimony damaging to the company's case." The Board also notes that "even assuming that such testimony was elicited during [the company's] interrogation of the Board agents, their memoranda would properly not be made available absent an appropriate request. . . . Such a request was never made." We note that the Board's regulation does not require that the witness's testimony was adverse to the employer. 29 C.F.R. § 102.118(c) (1978) requires only that the request for production be made after the witness's testimony, and that the materials requested relate to the subject matter of the witness's testimony.

that it would have been more reasonable for the hearing officer to have indicated clearly that the statements, if desired, should be requested after the Board agents had testified, his failure to do so does not excuse the failure of the company counsel to renew that request at the proper time.

Fotomat further contends that because the Board agents were adverse witnesses within the meaning of the Federal Rules of Evidence, we should treat Fotomat's examination of the witnesses as a cross–examination and thus allow inspection before they testify.[4] This argument misconceives the rationale underlying the *Jencks* rule. Both *Jencks* and the Board's regulations require the government to disclose only those materials which relate to testimony which the witness has already given. Before the witness has testified, regardless of whether he is treated "as if" on cross–examination, it is impossible to so restrict the materials which the government must divulge.[5]

A rule which would allow the company to examine a witness's statement in advance of his testimony would for all practical purposes allow unlimited discovery. We recognized in *NLRB v. Valley Mold Co.*, 530 F.2d 693, 695 (6th Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976), that allowance of pretrial discovery "is a matter within the discretion of the Board." In *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241–42, 98 S.Ct. 2311, 2326–27, 57 L.Ed.2d 159 (1978), the Supreme Court recognized the problems inherent in prehearing disclosure of witnesses' statements in an NLRB proceeding. Mr. Justice Marshall wrote for the Court:

> In short, prehearing disclosure of witnesses' statements would involve the kind of harm that Congress believed would constitute an "interference" with NLRB enforcement proceedings: that of giving

a party litigant earlier and greater access to the Board's case than he would otherwise have. As the lower courts have noted, even without intimidation or harassment a suspected violator with advance access to the Board's case could " 'construct defenses which would permit violations to go unremedied.' " *New England Medical Center Hospital v. NLRB*, 548 F.2d 377, 382 (CA 1 1976), quoting *Title Guarantee Co. v. NLRB* [2 Cir.] 534 F.2d [484], at 491. This possibility arises simply from the fact of prehearing disclosure of any witness statements, whether the witness is favorable or adverse, employee or nonemployee.

Although the company's request here was made during the hearing, disclosure of the reports before the testimony of Board agents would create many of the same problems. Requiring disclosure of a witness's statement before he testified would enable the company, if it desired, to forego calling the witness altogether if its examination of the statement indicated that to be the more advantageous course of action. More important, such a procedure would allow the company to rummage through the internal memoranda of the Board agents and to discover the agents' thought processes and observations concerning matters which were never intended to be explored at the hearing.

### III.

■ Fotomat also claims that the hearing officer improperly limited the scope of the hearing. In support, Fotomat points to the hearing officer's ruling that Fotomat could not ask the Board agents how they transported the ballot boxes between polling places. We note that none of Fotomat's objections can be construed to challenge the

---

**4.** Rule 611(c) of the Federal Rules of Evidence provides: "[W]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Although this rule allows a party to treat his own witness as though he were on cross–examination, it does not translate direct examination of hostile witnesses into cross–examination for all purposes.

**5.** If after examination of the statement further questioning is necessary either to impeach the witness, refresh the witness's recollection, or supplement the witness's testimony, the witness may be called for further examination or cross–examination.

manner in which the Board agents transported the ballot box. This issue was raised for the first time at the hearing. Our review of the record convinces us that the hearing officer actually allowed the company to range beyond the strict letter of its objections in its examination of the witnesses. The hearing officer allowed the company freely to inquire into all matters concerning the activities at the polling places. In light of the objections filed by the employer, we do not find the hearing officer's rulings on the proper areas of inquiry at the hearing unduly restrictive.

### IV.

■ Finally, Fotomat contends that the union's lack of majority support made the Board's certification of the union improper and justified Fotomat's refusal to bargain. The company asserts that the number of Fotomat stores and employees in the Cleveland area have increased approximately 50% since the election. Fotomat further claims that there has been a "massive turnover" of Fotomat employees since the election.

The plain answer to this claim is that the bargaining unit specified in the Board's order is limited to the employees at the 26 Fotomat locations which were in operation at the time of the election. These 26 locations are specifically listed in the Board's description of the bargaining unit which the union is certified to represent. Thus the election and the certification of the union have no effect on the employees at the new Fotomat locations.

■ The company has produced no evidence that a majority of new employees do not support the union. As we observed in *NLRB v. Washington Manor, Inc.*, 519 F.2d 750, 753 (6th Cir. 1975): "A high turnover of employees unaccompanied by objective evidence that new employees do not support the union is no evidence of loss of majority status by the union." We therefore conclude that the company's fourth basis for its refusal to bargain is without merit.

Accordingly, the Board's order will be enforced and the company's petition for review is denied.

MERRITT, Circuit Judge, dissenting.

I cannot conclude that the Company was not prejudiced when it was denied certain affidavits. The affidavits may contain unique evidence favorable to the Company. They may not. We simply cannot tell, regardless of where the probabilities may lie. Nor is it reasonable for us to require the Company to prove the usefulness of the affidavit's contents. This smacks of *Catch–22*. If the Company knew what the contents were, they would not need to ask for them. I do not believe our Court should condone such heavy–handed action by the Board. I would deny enforcement and require the Board to conduct further proceedings.