**ATR WIRE AND CABLE COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent,**

and

**International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America (UAW), Intervenor.**

No. 80–1376.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1981.

Decided Feb. 16, 1982.

Jeffrey A. Belkin, Millisor, Belkin & Nobil, Akron, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, John D. Burgoyne, Judith Dowd, N.L.R.B., Washington, D. C., for respondent.

Herbert L. Segal, Irwin H. Cutler, Jr., Kathleen Pellegrino, Louisville, Ky., for intervenor, Intern. Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW).

Before EDWARDS, Chief Judge, and ENGEL and MARTIN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

The National Labor Relations Board petitions this court to enforce its order directing Firestone Wire and Cable Company to bargain with the Union, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW. During the pendency of this appeal, Firestone Wire and Cable Company changed its name to ATR Wire and Cable Company. The motion to substitute the new name for the former was granted, and we have no further information regarding the transaction. Because we granted this motion we will refer to the employer throughout this opinion as ATR Wire. ATR Wire opposes enforcement of the order of the Board and cross-petitions for review on the ground that the Board improperly certified the Union as the employees' bargaining representative.

A representation election was held at ATR Wire's Danville, Kentucky plant on April 4 and 5, 1979. The Union won the election by a slim margin of 7 votes: out of 364 eligible voters, 183 voted for the Union; 176 voted against. ATR Wire filed a timely objection to the fairness of the election, raising 11 specific contentions. After an administrative investigation, the Regional Director overruled the objections, concluding that ATR Wire failed to raise substantial and material issues of fact warranting a hearing.

On November 7, 1979, the Board adopted the Regional Director's report and recommendation, after considering ATR Wire's exceptions and concluding that they raised no material or substantial issues of fact. The Board certified the Union. ATR Wire has refused to bargain with the Union. After considering subsequent unfair labor practice charges brought by the Union against ATR Wire, the Board ordered ATR Wire to bargain. We deny enforcement and remand for an evidentiary hearing.

On appeal, ATR Wire contends that it was entitled to a hearing on its election exceptions because it made a *prima facie* showing that threats made by union adherents and acts of vandalism against pro-company employees created a coercive atmosphere rendering a fair election impossible. ATR Wire filed 15 affidavits of employees, all of which showed that union proponents threatened employees who wore pro-ATR Wire buttons or hats, or who indicated a willingness to vote against the Union. The alleged threats ranged in severity from a refusal to cooperate with a pro-ATR Wire employee to a blatant threat of physical harm to a "company" supporter. Furthermore, several affiants alleged that their cars had been vandalized soon after the affiants publicly expressed support for the company. Numerous affiants stated that they were afraid to support ATR Wire openly, and that the pre-election atmosphere was tense. ATR Wire argues that

these affidavits served to raise material factual questions as to whether the pre-election atmosphere was tainted by threats of reprisal.

Despite the substantial allegations of misconduct raised by the affiants, the Regional Director dismissed their cumulative effect on the election, concluding that "no evidence was presented to *establish* that any of these alleged threats were made by an agent or representative of the Petitioner" (emphasis added). The Director's decision that the "contact group" members were not union agents, was based entirely upon the affidavit of the Union's staff organizer, in which the organizer claims to have "apologized" for the particular incident and warned union supporters to behave decorously. Furthermore, the Director found ATR Wire's affidavits deficient because they did not contain allegations of union violence. Finally, the Director concluded that ATR Wire failed to establish union responsibility for alleged acts of vandalism.

The Board argues that a hearing on ATR Wire's exceptions was not required because even if ATR Wire's allegations were fully credited, ATR Wire would still fail to establish that the election was unfair.

█ As an initial matter, we are unable to assess fully the evidence the Regional Director relied on because he did not transmit the full record to the Board. Specifically, he failed to transmit union affidavits obtained *in camera*, to which ATR Wire had no access. It is clear that the Director relied heavily on the affidavit of Kettler, the union staff organizer, in concluding that the hecklers and vandals were not union agents. We have repeatedly held that the Board abuses its discretion by adopting a Regional Director's report if the Director fails to transmit to the Board all the evidence upon which the Director relies. *E.g. NLRB v. Curtis Noll Corp.*, 634 F.2d 1027 (6th Cir. 1980); *Prestolite Wire Div. v. NLRB*, 592 F.2d 302 (6th Cir. 1979). In our view, the Board abused its discretion by adopting the Regional Director's report without the benefit of Kettler's affidavit which clearly influenced the factual determinations.

█ Although we do not have before us all of the pertinent evidence, we conclude from ATR Wire's contentions and exceptions alone that it raised sufficient material questions to warrant a hearing. One salient fact that was directly disputed was the question of agency: were members of the "union contact group" alleged to be responsible for threats and vandalism agents of the Union. In our view, this is a substantial issue, and its resolution should not have been based on Kettler's affidavit. It is clear to us that the Regional Director could not have viewed the evidence most favorably to ATR Wire and yet have reached this conclusion.

We conclude that ATR Wire clearly demonstrated the existence of factual issues concerning the fairness of the election which could only be resolved by a hearing. The 15 affidavits are facially sufficient to establish a *prima facie* case that laboratory conditions were destroyed. *See Anchor Inns, Inc. v. NLRB*, 644 F.2d 292 (3rd Cir. 1981); *NLRB v. Curtis Noll Corp., supra.*

Accordingly, we deny enforcement and remand to the Board for further proceedings in accordance with this opinion.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, dissenting.

Under the doctrine of *NLRB v. Tennessee Packers, Inc.*, 379 F.2d 172 (6th Cir.), *cert. denied*, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967), a case which has never been overruled in this court, we plainly should enforce the Board's order.

In *Tennessee Packers* this court said:

In order to raise "substantial and material factual issues", it is necessary for a party to do more than question the interpretation and inferences placed upon the facts by the Regional Director. *N.L.R.B. v. National Survey Service Inc.*, 361 F.2d 199 (C.A.7); *N.L.R.B. v. J. R. Simplot Company*, 322 F.2d 170 (C.A.9); *Macomb Pottery Company v. N.L.R.B.*, 376 F.2d 450 (C.A.7); *N.L.R.B. v. J. J. Collins' Sons, Inc.*, 332 F.2d 523 (C.A.7); *N.L.R.B.*

*v. Sun Drug Co.*, 359 F.2d 408 (C.A.3). It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. *N.L.R.B. v. National Survey Service, Inc.*, supra; *N.L.R.B. v. J. R. Simplot Company*, supra; *Macomb Pottery Company v. N.L.R.B.*, supra. Mere disagreement with the Regional Director's reasoning and conclusions do not raise "substantial and material factual issues." This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof.

*Id.* at 178.

In this case the company's contentions concern alleged threats or abusive language and some instances of property damage, which adherents to the company's side related to its attorneys in the form of affidavits.

There was, however, very broad participation in the election and an atmosphere which allowed company adherents to appear at union meetings, albeit they were known to be opposed to the union organizing campaign. There is no indication in this record of any coerced voting.

The majority result here, if widely adopted, would occasion the Board to conduct a hearing in practically every election in which the union prevails. The resulting delay between election and certification in NLRB election cases could be lengthened, as I have previously pointed out, to a decade or more. *See* Edwards, dissenting,

*Prestolite Wire Division v. NLRB*, 592 F.2d 302 (6th Cir. 1979).

The current delay in Board and court processing of union certification disputes (currently two years and nine months in this case) is already completely inconsistent with the purposes of the National Labor Relations Act. For the courts routinely to return all election disputes for hearings will create a strong tendency to take labor/management industrial conflicts out of the National Labor Relations Board and judicial processes and return them to the streets.