**MACOMB POTTERY COMPANY, etc., et al., Petitioners,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 15675.

United States Court of Appeals Seventh Circuit.

April 18, 1967.

Richard L. Marcus, R. Theodore Clark, Jr., Chicago, Ill., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., of counsel, for petitioners.

Joseph E. Finley, Melvin S. Schwarzwald, Cleveland, Ohio, Metzenbaum, Gaines, Schwartz, Krupansky, Finley & Stern, Cleveland, Ohio, of counsel, for intervenor.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Malcolm David Schultz, Atty., N.L.R.B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, George B. Driesen, Atty., N.L. R.B., for respondent.

Before KNOCH, CASTLE and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Macomb Pottery Company seeks review of the National Labor Relations Board finding that the company refused to recognize and bargain collectively with International Brotherhood of Operative Potters, AFL–CIO, and ordering the company to do so.

In an election February 11, 1965, the company's production and maintenance employees voted 73 to 57 (with one additional ballot being void and four challenged) for representation by this union. The board certified the union July 21, 1965, but the company has refused to recognize and bargain with it. These facts are undisputed. The only issue raised by the company's answer to the unfair labor practice complaint was, in essence, that the board should have declared the election invalid and should not have certified the union.

After the election, the company had filed timely objections, stating that conditions created by the union "made impossible a sober, informed exercise by the employees of their right to vote in said election without coercion and restraint." The regional director conduct-

ed an investigation, and made a report, recommending that the objections be overruled. The company filed exceptions, attacking the reasoning and conclusions of the regional director, but not asserting the existence of any particular evidence to refute the conclusions drawn. The board adopted the regional director's recommendations and certified the union.

On September 28, 1965, the board issued a complaint, alleging refusal to bargain. The company answered, challenging the election and certification. The general counsel moved for "summary judgment on the pleadings." The trial examiner ordered the company to show cause why the motion should not be granted, and to set forth a summary of any evidence, newly discovered or not available during the representation proceeding, which the company would proffer to attack the certification. The order stated that its purpose was to enable the examiner to determine whether there was any factual issue necessitating the taking of evidence. The company produced no summary of evidence, but replied that it had a statutory right to a hearing and that a motion for summary judgment cannot be granted in an unfair labor practice proceeding.

The examiner concluded there were no matters requiring a hearing, granted the motion for judgment on the pleadings, and recommended an order which the board adopted, and is now under review.

■ The position of the board is that the company's objections to the election have been adequately litigated and determined, albeit without a hearing, in the representation case. The examiner in the unfair labor practice proceeding afforded an opportunity for the company to produce newly-discovered or previously unavailable evidence, if material.

The company apparently was unable to produce such evidence; at least it declined to furnish the invited summary. Thereupon the examiner granted the general counsel's motion. The validity of this procedure has been decided or assumed in at least two cases.[1] Although 29 U.S.C.A. § 160, the statute governing the unfair labor practice proceeding, does require "a notice of hearing" and provides to the person complained of the right "to appear in person or otherwise and give testimony," it cannot logically mean that an evidentiary hearing must be held in a case where there is no issue of fact.

■ 29 U.S.C.A. § 159 governs the representation proceeding and subs. (d) thereof provides that where there is a petition for enforcement or review of an order in an unfair labor practice proceeding, based upon facts certified after a representation proceeding, the record in the representation proceeding shall be included in the record filed in court. Thus review of the propriety of the certification is accomplished by a review of the record in the representation proceeding, the certification having, as here, been relied on as a verity in the unfair labor practice proceeding.

■ 29 U.S.C.A. § 159 does not require a hearing in the representation proceeding upon objections filed after an election. The board's rules require a hearing on such objections only "if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing."[2]

■■ The general standard for judicial review of a certification is whether the board abused its discretion.[3] And where the challenge is based, as here, upon the fact that the objections were disposed of without hearing, the ques-

1. N. L. R. B. v. National Survey Service, Inc. (7th Cir. 1966), 361 F.2d 199, 202; Neuhoff Brothers, Packers, Inc. v. N. L. R. B. (5th Cir. 1966), 362 F.2d 611, 613.

2. 29 C.F.R. 102.69(c).

3. Olson Rug Company v. National Labor Relations Board (7th Cir. 1958), 260 F.2d 255, 256; N. L. R. B. v. J. R. Simplot Company (9th Cir. 1963), 322 F.2d 170, 172; Neuhoff Brothers, Packers, Inc. v. N. L. R. B., supra note 1, 362 F.2d at 614.

tion is whether the objecting party's exceptions to the report or findings of the regional director show that there were substantial and material issues of fact which could be resolved only after a hearing.

As stated by the ninth circuit:

' " 'These exceptions do not directly meet or mention any of the facts found by the Regional Director and raise no factual issues whatsoever. They do not suggest what new facts a hearing would develop or what if any evidence would be produced. They simply question the ultimate interpretation placed by the Director upon certain conduct. A hearing apparently would not deal with matters of factual proof but would serve only to permit argument which could as well have been presented in the writing itself.

" 'Under these circumstances it was not abuse of discretion for the Board to proceed without hearing.' "[4]

The exceptions filed by the company do not indicate any disagreement with the regional director's report of the events which underlay the company's objections. These events were: a misstatement of fact by the union, threatening conversations described by two employees, and a statement by the union that initiation fees would be waived.

The regional director concluded that the misstatement did not have a real impact on the election, that the threatening conversations were not attributable to the union, and were isolated incidents, and that the waiver of the initiation fee was not a benefit conditioned upon the employees' vote.

■ In the exceptions the company argued with the regional director's reasoning and his legal conclusions. It did not suggest that it could produce evidence to establish that the misstatement had an impact upon the free choice of the employees, nor that the threatening conversations produced an atmosphere of fear and reprisal. Under the circumstances the board's failure to hold a hearing does not destroy the certification.

The question then is whether the board abused its discretion in declining to invalidate the election on the basis of the regional director's report.

■ 1. *The misstatement.* On February 3 or 4, the company issued a bulletin to all employees, urging a "No" vote. "Fact No. 3" was:

"In addition to each dollar paid you in wages, the company pays an additional $.21½ in fringe benefits, which include: your retirement payroll, life insurance, hospital and surgical insurance, paid vacations, and paid holidays. Remember—this union is out after your dues money—*this is all they are interested in*! Don't be mislead by the phony promises which they have no power to deliver."

On February 9 the union's international representative distributed a leaflet, urging a "Yes" vote. "Fact No. 3" was:

"Twenty-one and one-half cents ($.21½) per hour is very low for fringe benefits."

The regional director acknowledged that 21½¢ per dollar is substantially greater than 21½¢ per hour, and that the union leaflet was circulated so late that the company could not effectively point out the error. But the regional director took into consideration all the circumstances, including the fact that the statement concerned benefits the employees were receiving, that they had access to more reliable information about the figure, and that "the gravamen of [the union's] statement was not to charge that the 21½¢ per dollar was not true, but that 21½¢ per hour is 'very low.' " The conclusion of lack of impact may be debatable, but cannot be said to be so unreasonable as to be an abuse of discretion.

4. N. L. R. B. v. J. R. Simplot Company (9th Cir. 1963), 322 F.2d 170, 172, quoted with approval by this court in N. L. R. B. v. National Survey Service, Inc., supra note 1, 361 F.2d at 205.

■ 2. *The threatening telephone conversations.* A female employee said she received three phone calls at her home in the evening from a man who refused to identify himself. The man indicated she would be well advised to support the union side, and that if she didn't she would be looking for another job before too long. The recipient of the calls did not tell any other employees of them. As pointed out by the regional director, there is no evidence that these calls were attributable to the union. 134 employees cast ballots. We do not deem it an abuse of discretion to consider that this series of conversations, plus the threatening conversation next considered, were insufficient, if they occurred, to create an atmosphere of fear and reprisal.

■ 3. *The conversation about dynamiting.* Another female employee told of a conversation with a male employee who was active in soliciting authorization cards, was, with others, in frequent contact with the union representative, but was not a member of a formal union committee. According to the lady, the man approached her a few weeks before the election and said:

> "You know we're going to vote for the Union in a few days. If you don't vote for it the same thing could happen to you like those NFO dynamiting. You know what they did to them."

She replied:

> "You couldn't have said a worse thing to me. If you had really wanted me to vote for the Union, you wouldn't have talked to me like that. Just shut up and get over to the run you're working on or I'll call—the foreman."

The regional director deemed it unnecessary to determine, by hearing, whether this conversation occurred because there was no basis for an inference that the union either authorized the conduct or ratified it. The company argues upon general principles of agency that since the man was soliciting on behalf of the union, with its knowledge, the union is responsible for what the man said in connection with such solicitation. It does not appear that anyone connected with the union knew of this type of threat, nor is any course of conduct or circumstances shown from which knowledge or approval could be inferred. There is nothing to show that the conversation was overheard by other employees, nor repeated to other employees by the lady involved. In the light of the circumstances, the conclusion that the employees' freedom of choice had not been impaired by these incidents is not an abuse of discretion.

■ 4. *Waiver of initiation fees.* "Fact No. 2" of the company's bulletin was as follows:

> "Your company has paid your wages and fringe benefits without any union, *without any strikes,* and without paying to the union one per cent of *your pay* to the International Union, plus monthly Local Union dues, and your initiation fee."

"Fact No. 2" of the union's response was as follows:

> "The union dues are one per cent (1%) of your wages. The *initiation fee* is waved because all employees working at Haeger Pottery when the contract is signed will be charter members. *No initiation fee for charter members.*
>
> "If you received ten cents ($ .10) per hour increase with a Union you would get ($4.00) per week increase based on forty hours per week. If you made one hundred dollars ($100.00) a week your Union dues would be one dollar ($1.00) per week.
>
> "$4.00—increase
> —1.00—Union dues
>
> $3.00—Gain per week"

The regional director found no evidence of any statement that the promised waiver was limited to those who signed authorization cards or voted for the union. Since the waiver would be available to each employee no matter how he voted, the regional director concluded that there was no offer of a *quid pro quo* for a vote.

The company points out that the waiver was conditioned so as to apply "when the contract is signed" and thus conditioned upon the union's winning the election. But we agree with the board that the important consideration is that the promise was not conditioned on the vote or support of the individual employee. If the union won and a "contract is signed," the employee who voted against the union would have the same benefit (i. e., waiver of fee) as the employee who voted for the union. Any persuasive effect the promise of waiver may have on an individual employee in these circumstances is no different in kind from a statement of the amount of the dues or other representations of the advantages and burdens of membership.

The board has held that waiver of initiation fees by a union during a pre-election campaign interferes with the conduct of the election when the waiver is promised as the *quid pro quo* for the employees' votes.[5] But the nondiscriminatory waiving of fees during the organizational period, "does not smack of coercion but rather of promotional persuasion."[6] In finding no impropriety in an exemption of all who join before a contract is signed, the second circuit said:

"* * * This statement gave adequate notice to all employees, whether they approved or disapproved of the union, that they had nothing to lose by waiting for the union to achieve recognition before applying for membership."[7]

The first circuit has said:

"We are compelled to conclude that the waiver of initiation fees predicated upon joining before the election is a substantial organizational inducement. On the other hand, we fully agree with the Board that a pre-election promise

permitting all present employees, whether they vote for the union or not, to join without payment of an initiation fee up to and within a reasonable time immediately after the election would not be an inducement. Gilmore Indus., Inc., 1962, 140 N.L.R.B. 100."[8]

The regional director and the board correctly concluded that the promise of waiver of initiation fees did not invalidate the election.

None of the first three points raised by the company, taken individually, compels the conclusion that the board abused its discretion. Neither do we find such abuse, considering them collectively.

The petition to set aside the board's order is denied and the board's petition for enforcement granted.

---

5. Lobue Bros. (1954), 109 N.L.R.B. 1182.

6. N. L. R. B. v. Taitel (7th Cir. 1958), 261 F.2d 1, 4, cert. denied (1959), 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed.2d 677.

7. Amalgamated Clothing Workers of America v. N. L. R. B. (2d Cir. 1965), 345 F.2d 264, 268.

8. N. L. R. B. v. Gorbea, Perez & Morell, S. en C. (1st Cir. 1964), 328 F.2d 679, 682.