**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The CAMBRIDGE WIRE CLOTH COMPANY, INC., Respondent.**

**No. 78–1570.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1980.

Decided June 9, 1980.

---

Collis Suzanne Stocking, N.L.R.B., Washington, D.C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Andrew F. Tranovich, N.L.R.B., Washington, D.C., on brief), for petitioner.

Warren M. Davison, Baltimore, Md., (Earle K. Shawe, Leslie R. Stellman, Shawe & Rosenthal, Baltimore, Md., on brief), for respondent.

Bernard Kleiman, Gen. Counsel, Chicago, Ill., Frank Petramalo, Jr., Jeffrey L. Gibbs, Bredhoff, Gottesman, Cohen & Weinberg, Washington, D.C., on brief, for amicus curiae The United Steelworkers of America, AFL–CIO.

Before WIDENER and SPROUSE, Circuit Judges, and SHIRLEY B. JONES, United States District Judge for the District of Maryland, sitting by designation.

SHIRLEY B. JONES, District Judge:

The National Labor Relations Board (Board) petitions this Court pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for enforcement of its order requiring Respondent, The Cambridge Wire Cloth Company, Inc. (Cambridge Wire), to bargain with the United Steelworkers of America, AFL–CIO (Union). Cambridge Wire resists enforcement on the ground that the Union election, upon which the Board's order was based, was invalid because of certain improprieties, thus necessitating a new election. For reasons hereinafter set forth, the Board's petition for enforcement must be denied.

On July 15, 1977, the Union, seeking to become the certified bargaining representative of Cambridge Wire's employees, petitioned the Board to conduct an election. The election was held on September 28, 1977, under the Board's supervision, and a majority of the eligible voters cast their ballots for the Union. Cambridge Wire challenged the propriety of the election and filed objections with the Board's Regional

Director on October 4 essentially contending:

a) that the Union was responsible for defacing official election notices by affixing Union labels stating "Vote Yes" on the plexiglass front of bulletin boards which contained sample ballots of the election;

b) that two persons acting on behalf of or with the acquiescence of the Union coerced and threatened various employees to vote for the Union;

c) that the Union issued material misrepresentations in its campaign literature, specifically:

(1) this union would never go out on strike;

(2) there would never be any "sympathy" strikes; and

(3) the employees would be dealing with a local union.

The Regional Director of the Board filed his "Supplemental Decision and Certification of Representative" on December 2 overruling Cambridge Wire's objections and certifying the Union. Cambridge Wire sought review of the Regional Director's decision pursuant to 29 C.F.R. § 102.69 (1979). The Board denied review on December 30 concluding that Cambridge Wire "raised no substantial issue warranting review." The Union filed a complaint with the Board on January 27, 1978 alleging that Cambridge Wire had refused to recognize it. Cambridge Wire, although admitting the technical correctness of the complaint, continued to challenge the election with the same allegations of improprieties that it had previously made, and further asserted that it had been improperly denied a hearing by the Regional Director and the Board as to these alleged wrongs. The Board found that Cambridge Wire had engaged in unfair labor practices within Section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5). 236 NLRB No. 190 (June 30, 1978). The Board found it unnecessary to reach the merits of Cambridge Wire's allegations, concluding that absent arbitrary action, the Regional Director had the discretion not to direct a

hearing. The Board found no abuse of discretion and the facts as previously found by the Regional Director were not disturbed. This appeal followed.

We find it unnecessary to reach the merits of Cambridge Wire's objections to the election because we find that the Board failed to comply with its own regulations.

■ Cambridge Wire contends, for the first time on appeal, that the Regional Director failed to transmit to the Board the complete record in this case. Cambridge Wire maintains that it had assumed that upon filing its request for review to the Board from the Regional Director's ruling, all the material presented to him would have been transmitted to the Board. The error, Cambridge Wire claims, was on the Board's part in not reviewing the complete record.

The record of the proceedings before the Regional Director consists of:

the petition, notice of hearing with affidavit of service thereof, motions, rulings, orders, the stenographic report of the hearing and of any oral argument before the regional director, stipulations, exhibits, documentary evidence, affidavits of service, depositions, and any briefs or other legal memoranda submitted by the parties to the regional director or to the Board, and the decision of the regional director, if any. 29 C.F.R. § 102.68 (1979).

The record to be transmitted to the Board consists of:

The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in § 102.68, shall constitute the record in the case. Materials other than those set

out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision. 29 C.F.R. § 102.69(g) (1979).

The Board contends that the regulation clearly states that where there has been no hearing before the Regional Director, it is incumbent upon the party seeking review before the Board to append to its exceptions materials, such as in the present case, that were submitted to the Regional Director but which were omitted from his report or decision. Voluminous material containing, in part, affidavits and campaign literature, was submitted to the Regional Director. Appended to his decision of December 2, 1977, were three pictures depicting the alleged defacement by the Union of bulletin boards containing the sample ballots. This decision (with the three pictures appended), Cambridge Wire's request of the Board for review and a memorandum of law were all that the Board apparently considered in the denial of Cambridge Wire's request for review. Numerous items which were before the Regional Director were not transmitted to the Board. The bone of contention is whose responsibility it was to transmit to the Board the material that was before the Regional Director.

We are asked to construe a somewhat ambiguous regulation, 29 C.F.R. § 102.69(g) (1979). The Sixth Circuit recently addressed this issue in *Prestolite Wire Division v. NLRB*, 592 F.2d 302 (6th Cir. 1979). In *Prestolite Wire*, the Regional Director

was given numerous affidavits concerning objections to an election. The Regional Director apparently considered the affidavits in his decision, which was rendered without a hearing, but did not submit them as part of the record to the Board when Prestolite Wire sought review. As in the instant case, Prestolite Wire argued that sections 102.68 and 102.69(g) prescribe what constitutes the record before the Regional Director and what he must transmit to the Board on a request for review of his own decision.

The Court in *Prestolite Wire* held that "[w]ithout expressly ruling that the Regional Director is invariably required under Section 102.69(g) to transmit to the Board all of the materials considered by him (although the language says 'shall'), we think that the better practice is to do so and we are unable to fault the company for having failed to anticipate that this procedure would not have been followed here." 592 F.2d at 305. The Court reasoned that the Regional Director assembles the record and then transmits it to the Board and thus is the proper party to bear the responsibility of transmitting a complete record. We adopt the reasoning and holding of *Prestolite Wire* on this issue.

The Board argues that 29 C.F.R. § 102.-69(g) supports its assertion that it was Cambridge Wire's responsibility to transmit the record. Subsection (g) permits the party filing objections to "append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision." As did the Court in *Prestolite Wire*, we do not find that this language imposes responsibility on Cambridge Wire to transmit to the Board all the material it furnished the Regional Director in his investigation.[1]

1. In *NLRB v. Osborn Transportation, Inc.*, 589 F.2d 1275 (5th Cir. 1979), the Court held that the failure to include affidavits in the Regional Director's report was harmless in that the contents of the affidavits were included in the Company's exceptions. "Because of our holding, we need not reach the question of whether the affidavit was 'documentary evidence' and therefore part of the record or was a 'docu-

ment' which should have been appended to the list of exceptions to the Acting Regional Director's Report." *Id.* at 1282. The Board there, as in the instant case, construed section 102.69(g) as requiring the party excepting to the Regional Director's decision to append any documents which were not included in the decision. *Accord, NLRB v. Dobbs House, Inc.*, 613 F.2d 1254, 1260–61 (5th Cir. 1980); *see Bir-*

As a matter of common sense, the Regional Director who has possession of the materials in the record, is the logical party to transmit that record to the Board.

■ Because we find that it is the Regional Director's responsibility to transmit the record to the Board, it is clear that he should have transmitted all the materials which were part of the record and considered by him. In fact, we note from the record that much of the material the Regional Director omitted to send to the Board was material which he specifically requested from Cambridge Wire. In a teletype message dated October 4, 1977, to Cambridge Wire's lawyers, the acting Regional Director acknowledged receipt of Cambridge Wire's objections to the conduct of the election and requested submission of all "Affidavits, Signed Statements, Documents [and] Other Supporting Evidence." (App. 11). The material submitted by Cambridge Wire was part of the record in the Regional Director's investigation, section 102.68, and thus should have been transmitted by him to the Board pursuant to section 102.69(g). Where the Regional Director determines that a hearing is not warranted, which is within his discretion, *Newport News Shipbuilding & Dry Dock Co. v. NLRB*, 594 F.2d 8, 11 (4th Cir. 1979), we do not view the requirement that he transmit to the Board all the materials he considered in his investigation as an unduly burdensome chore.

Our ruling in no way disturbs the settled law that it is within the Regional Director's discretion to grant a hearing if "substantial and material factual issues exist." 29 C.F.R. § 102.69(d) (1979). We, however, cannot view the failure to transmit the record in this case as harmless. Therefore, the application for enforcement must be denied, and the case remanded to the Board with direction to the Regional Director to transmit all the material considered in his decision to the Board for its review. Our

decision should not be interpreted as any indication of the merits of the case.

■ During the pendency of this appeal, the Board sought to withdraw its petition for enforcement to consider the issue of campaign misrepresentations under a new standard. We remand this issue to the Board to allow it to make its findings of fact and decision in the first instance.

Prior to April 8, 1977, the standard the Board employed in judging whether campaign literature interfered with an employee's freedom of choice was set forth in *Hollywood Ceramics Co.*, 140 NLRB 221 (1962). The Board held that where there have been misrepresentations "which involve[d] a substantial departure from the truth, at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election," 140 NLRB at 224, then the election may have to be set aside. The Board noted that even assuming such a misrepresentation, it must still be determined to have affected the results of the election. By this process the Board could "balance the right of the employees to an untrammeled choice, and the right of the parties to wage a free and vigorous campaign with all the normal legitimate tools of electioneering." 140 NLRB at 224.

This standard met its demise in *Shopping Kart Food Market*, 228 NLRB 1311 (April 8, 1977). A majority of the Board held that the rule in *Hollywood Ceramics* was no longer proper and stated that the Board "will no longer set elections aside on the basis of misleading campaign statements." 228 NLRB at 1313. This new standard lasted almost eighteen months. In *General Knit of Calif.*, 239 NLRB No. 101, 99 LRRM 1687 (December 6, 1978), a majority of the Board returned to the *Hollywood Ceramics* rule.

mingham *Ornamental Iron Co. v. NLRB*, 615 F.2d 661 (5th Cir. 1980). We, however, are persuaded that *Prestolite Wire Division v. NLRB*, 592 F.2d 302 (6th Cir. 1979) represents the more persuasive construction of sections 102.68 and 102.69(g). *Accord, NLRB v. RJR Archer, Inc.*, 617 F.2d 161, 162–163 (6th Cir. 1980).

**1200**

This same issue was considered by this Court in *Blackman-Uhler Chem. Div. Synalloy Corp. v. NLRB*, 558 F.2d 705 (4th Cir. 1977). In that case we held that an election was valid under the standard of *Hollywood Ceramics*. Subsequently, *Shopping Kart* was decided and a rehearing *en banc* in *Blackman-Uhler* was granted. Upon rehearing the Court declined to rule on the merits of the case but rather held that the appropriate course was to remand to the Board to reconsider the case in light of its ruling in *Shopping Kart*. *Blackman-Uhler Chem. Div. Synalloy Corp. v. NLRB*, 561 F.2d 1118 (4th Cir. 1977). We found controlling the Supreme Court's direction that:

> Appellate courts ordinarily apply the law in effect at the time of the appellate decision, see *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). However, a court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to determine in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act.

*NLRB v. Food Store Employees Union, Local 347*, 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080, 40 L.Ed.2d 612 (1974).

Under the then proper standard, *Shopping Kart*, the Regional Director and the Board never considered the merits of Cambridge Wire's objections on the campaign misrepresentations issue. In reliance on *Blackman-Uhler* we decline to enforce the Board's order and the case is hereby remanded to the Board. The Board shall determine the applicability of *General Knit* to the instant case.

The case is remanded to the Board with direction to the Regional Director to transmit all the material considered in his decision to the Board; and to determine in the first instance the application of the *General Knit* standard to the facts of this case.

ENFORCEMENT DENIED; CASE REMANDED.