NATIONAL POSTERS, INC. and National Litho, a division of National Posters, Inc., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 82–2140.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1983.

Decided Nov. 3, 1983.

Maurice Baskin, Washington, D.C. (Venable, Baetjer, Howard & Civiletti, Washington, D.C., on brief), for petitioners.

Daniel R. Pollitt, N.L.R.B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Jolane A. Findley, Washington, D.C., on brief), for respondent.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

This is a petition by National Posters, Inc. ("Employer") for review of an order by the National Labor Relations Board ("Board"). That order, issued December 10, 1982, requires Employer to bargain collectively with the Baltimore Printing Pressmen and Assistants Union ("Union"). Employer had refused to bargain with the Union in order to obtain judicial review of the Board's certification of the Union as the bargaining representative of all production and maintenance employees at Employer's two Baltimore plants. Because we conclude that the Board improperly certified the Union, we vacate the order and remand to the Board for further proceedings.

## I.

Employer is a commercial poster printer. It employs over 50 people at its two Baltimore plants. Earl Seth, Jr., is president and owner of Employer. In the fall of 1981, the Union conducted an organizing campaign among Employer's employees. A central issue in the campaign was the level of wages and benefits, which had been cut back as a result of Employer's financial problems. The campaign culminated in a representation election which was held on December 15, 1981. The initial election tally was 24 for the Union and 21 against, with 4 challenged ballots, three by the Union and 1 by Employer.

Employer challenged the vote of employee Samuel John. The challenge was supported by an affidavit submitted by Seth, who indicated that he intended John to be employed only on a peak seasonal basis. John was hired in June, 1981 as a seasonal employee who is "on call" to perform the job of "racking."[1] When John worked, he did so "shoulder-to-shoulder" with Employer's two full-time rackers. John was paid the minimum wage, $3.35 per hour, while the two full-time rackers earned $3.47 and $4.37 per hour respectively. Unlike John, their salaries would increase with their length of service. John also did not receive any of the benefits enjoyed by full-time employees such as health and welfare insurance, vacation pay, sick pay, or holiday pay.

Employer's business experienced a seasonal surge of business during the Christmas rush season. Employer maintained a pool of seasonal employees who could work during that period of increased demand. Seasonal employees, including John, were free to work elsewhere when not working for Employer. These employees had no assurance of recall.

Employer maintains that John's hours during late September through December reflect the Christmas rush and that John did not work after the payroll period ending January 2, 1982, because the Christmas rush period ended.

Employer also objected to the election on grounds that the Union had engaged in campaign misconduct by making five material misrepresentations that affected the election results. In its Objection 1, Employer alleged that in the week prior to the

1. From the date of his hiring through the end of 1981, John worked the following number of hours during the weekly pay periods.

| Week ending 1981 | Hours Worked |
| --- | --- |
| 6/30 | 9 |
| 7/3 | 0 |
| 7/10 | 0 |
| 7/17 | 0 |
| 7/24 | 36 |
| 7/31 | 8 |
| 8/7 | 0 |
| 8/14 | 0 |
| 8/21 | 0 |
| 8/28 | 22½ |
| 9/4 | 0 |
| 9/11 | 0 |
| 9/18 | 0 |
| 9/25 | 30½ |
| 10/2 | 43¾ |
| 10/9 | 0 |
| 10/16 | 0 |
| 10/23 | 27 |
| 10/30 | 36 |
| 11/6 | 45 |
| 11/13 | 51¼ |
| 11/20 | 47¾ |
| 11/27 | 28¾ |
| 12/4 | 8½ |
| 12/11 | 35¾ |
| 12/18 | 50 |
| 12/25 | 26¼ |
| 1/2/82 | 16 |

election, Union President Gerald Brown, as well as other Union representatives, falsely told numerous employees that Employer had spent large sums of money on gifts for his children, including the purchase of a large farm for his daughter. In its Objection 2, Employer alleged that the Union had materially misrepresented the Union's pension plan by stating or implying that employees automatically would be entitled to participate in the Union's plan upon selecting the Union, and that employees' participation in the plan automatically would be paid for out of union dues. In its Objection 3, Employer alleged that the Union materially misrepresented the health and welfare benefits to which the employees would be entitled if the Union were selected by stating or implying that all of the Union's contracts contained all health and welfare benefits being promised by the Union and leading the employees to believe that they automatically would be entitled to optical coverage and other benefits upon mere payment of dues following the Union's certification. In its Objection 4, Employer alleged that Union representatives misrepresented to numerous employees the amount of dues employees would be required to pay to join the Union. Lastly, in its Objection 5, Employer generally alleged that "various other false and misleading statements" were made by Union representatives. These exceptions were supported by the affidavits of Seth and three supervisors.

On March 16, 1982, the Board's Regional Director issued, without a hearing, a report recommending that Employer's challenges be overruled. The Regional Director found that John was an eligible voter, rejecting Employer's claim that John was a seasonal employee. Instead, the Regional Director characterized John as a part-time employee, finding that "Employer's need for John's services is more dependent upon the availability of jobs requiring extra racking, than upon particular peak periods of the business year." The Regional Director considered the ruling supported by (1) John working in each of the six months prior to the December election, (2) John performing, when he did work, the same tasks as full-time work-

ers and working shoulder-to-shoulder with those workers and (3) John being supervised by the supervisor of the full-time employees. The Regional Director then applied the Board's objective number of hours test for determining if part-time employees are eligible voters: part-time employees are eligible voters if they average four hours of work per week in the quarter preceding the election. See *V.I.P. Movers, Inc.*, 232 NLRB. 14 (1977); *Davison-Paxon Co.*, 185 NLRB 21 (1970). Since John averaged more than four hours per week, he was found to be eligible.

The Regional Director also overruled one of the Union's voter challenges and after counting the two challenged ballots, the new tally became 25–22 in favor of the Union. Thus, the two remaining challenged votes could not affect the election, assuming the challenges to the other two votes were properly overruled.

The Regional Director rejected all of the objections concerning Union misrepresentations. The Regional Director found that even if the allegations in Objection 1 were true, the misrepresentations did not accuse Seth of corporate malfeasance and, thus, under the standard set out in *Hollywood Ceramics/General Knit* did not affect election results. See *General Knit of California, Inc.*, 239 NLRB 619 (1978); *Hollywood Ceramics Co.*, 140 NLRB 221 (1962). Objections 2 through 5 were overruled because they were supported by only the hearsay affidavits of three supervisors, and not by the statements of witnesses to the alleged misrepresentations.

Employer filed timely objections to the Regional Director's decision, but on June 29, 1982, the Board affirmed that decision. The Board did so without a hearing and without review of the affidavits submitted by Employer to the Regional Director in support of its challenges. The Regional Director did not transmit the affidavits to the Board as part of the record. In its opinion, the Board did not specifically address Employer's challenge to John's eligibility or the alleged misrepresentation in Objection 1. With respect to Objections 2–5, the Board affirmed the Regional Di-

rector on the grounds that the alleged misrepresentations did not violate the *Hollywood Ceramics/General Knit* standard:

> Assuming the veracity of the Employer's claims regarding Employer's Objections 2–5, we find that the Employer failed to establish a *prima facie* case that the Petitioner made representations which would warrant setting aside the results of the election.

On July 14, 1982, the Regional Director certified the Union. Employer refused to bargain with the Union, and on December 10, 1982, the Board issued a cease and desist order requiring Employer to bargain collectively with the Union. Employer then petitioned this court for review of the Board's order.

## II.

Employer first claims that under *NLRB v. Cambridge Wire Cloth Co., Inc.,* 622 F.2d 1195 (4th Cir.1980), this case should be remanded to the Board with direction to the Regional Director to transmit all material included in his decision, including the various affidavits submitted by Employer, to the Board for its consideration. *Cambridge Wire* involved facts identical in material respects with those here. In that case, as here, the employer contended for the first time on appeal to this court that the Regional Director failed to transmit to the Board certain affidavits submitted by the employer. The Regional Director had issued his decision without a hearing and the employer had assumed that upon filing its request for review by the Board, the Regional Director would transmit to the Board all the material that had been presented to or considered by him.

This court, relying on 29 C.F.R. § 102.-69(g) and *Prestolite Wire Division v. NLRB,* 592 F.2d 302 (6th Cir.1979), held that it was the Regional Director's responsibility to transmit the record, including the affidavits, to the Board and that his failure to do so required a denial of enforcement. In *Prestolite,* the Sixth Circuit had held that "[w]ithout expressly ruling that the Regional Director is invariably required under Section 102.69(g) to transmit to the Board all of the materials considered by him (although the language says 'shall'), we think that the better practice is to do so and we are unable to fault the company for having failed to anticipate that this procedure would not have been followed here."[2] *Id.* at 305. In adopting the *Prestolite* reasoning, this court stated:

> We are asked to construe a somewhat ambiguous regulation, 29 C.F.R. § 102.-69(g) . . . .
>
> The Board argues that 29 C.F.R. § 102.69(g) supports its assertion that it was Cambridge Wire's responsibility to transmit the record. Subsection (g) permits the party filing objections to "append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision." As did the Court in *Prestolite Wire,* we do not find that this language imposes responsibility on Cambridge Wire to transmit to the Board all the material it furnished the Regional Director in his investigation.

*Cambridge Wire,* 622 F.2d at 1199.

The Board replies that in response to the *Prestolite* decision (and, presumably, *Cam-*

**2.** Section 102.69(g), as it read at the time, provided:

> The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in

§ 102.68, shall constitute the record in the case. Materials other than those set out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision.

*bridge Wire*), the Board amended § 102.-69(g), effective September 14, 1981, to make it clear that it is the employer's, and not the Regional Director's, responsibility to file supporting affidavits with the Board. We agree that new § 102.69(g) requires a result contrary to that reached in *Cambridge Wire*. The new section clearly provides that supporting affidavits are not part of the record unless submitted to the Board by the employer and that "[f]ailure to timely ... append that evidence to its submission to the Board ... shall preclude a party from relying on such evidence."[3] Furthermore, in a notice included at the end of his decision, the Regional Director informed Employer that it was its responsibility to transmit the affidavits to the Board.[4]

### III.

█ Employer next claims that the Board erred by not granting a hearing on the issue of John's eligibility to vote. The Board is required by "both due process of law and the Rules and Regulations of the Board itself" to hold a post-election hearing when the objecting party raises a "substantial and material issue of fact relating to the validity of a representation election." *The Methodist Home v. NLRB*, 596 F.2d 1173, 1178 (4th Cir.1979). *See* 29 C.F.R. §§ 102.69(c)(1), 102.69(d) ("hearing shall be conducted with respect to those objections or challenges which the regional director concludes raise substantial and material factual issues"). Whether there is such a material and substantial factual issue is "a question of law and ultimately a question for the courts." *NLRB v. Bata Shoe Co.*, 377 F.2d 821, 826 (4th Cir.1967), *cert. denied*, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). Furthermore, it is not sufficient for an employer merely to question the interpretation of or legal conclusions drawn from the facts by the Regional Director. *See Macomb Pottery Co. v. NLRB*, 376 F.2d 450, 453 (7th Cir.1967); *NLRB v. Sun Drug Co.*, 359 F.2d 408, 414 (3d Cir. 1966).

█ The critical legal conclusion drawn by the Regional Director was that John was

---

3. New § 102.69(g) provides, in pertinent part:

    (g)(1)(ii) In a proceeding pursuant to this section in which no hearing is held, the record shall consist of the objections to the conduct of the election or to conduct affecting the results of the election, any report on objections or on challenged ballots and any exceptions to such a report, any regional director's decision on objections or on challenged ballots and any request for review of such a decision, any documentary evidence, excluding statements of witnesses, relied upon by the regional director in his decision or report, any briefs or other legal memoranda submitted by the parties, and any other motions, rulings, or orders of the regional director. Materials other than those set out above shall not be a part of the record, except as provided in paragraph (g)(3) of this section.

    \* \* \* \* \* \*'

    (g)(3) In a proceeding pursuant to this section in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto may support its submission to the Board by appending thereto copies of documentary evidence, including copies of any affidavits, it has timely submitted to the regional director and which were not included in the report or decision. Documentary evidence so append-

    ed shall thereupon become part of the record in the proceeding. Failure to timely submit such documentary evidence to the regional director, or to append that evidence to its submission to the Board in the representation proceedings as provided above, shall preclude a party from relying on such evidence in any subsequent related unfair labor practice proceedings.

4. The notice informed Employer:

    Under the provisions of Section 102.69 of the Board's Rules and Regulations, exceptions to this report may be filed with the Board in Washington, D.C. Under the provisions of Section 102.69(g) of the Board's Rules, documentary evidence, including affidavits, which a party has timely submitted to the Acting Regional Director in support of its challenges and objections and which are not included in the Report, are not a part of the record before the Board unless appended to the exceptions or opposition thereto which a party files with the Board. Failure to append to the submission to the Board copies of evidence timely submitted to the Acting Regional Director and not included in the Report shall preclude a party from relying upon that evidence in any subsequent related unfair labor practice proceedings. Exceptions must be received by the Board in Washington by March 29, 1982.

a part-time, and not a seasonal, employee.[5] That legal conclusion allowed the Regional Director to apply the objective number of hours test, which test the Board does not apply to seasonal employees. *See Davison-Paxon Co.,* 185 NLRB 21 (1970). The conclusion is based on the Regional Director's factual finding that Employer's need for John's services was based on the periodic availability of work rather than on peak season demand.[6] That finding, however, is a resolution of the substantial and material factual issue raised by Employer. Employer's affidavits contain allegations that are *prima facie* sufficient to support the opposite finding that the need for John's services was dependent upon the Christmas peak season: (1) Employer experienced a Christmas peak season; (2) Employer maintains a pool of peak season employees; (3) John was hired to work only on a peak season basis; (4) John was paid less than and received none of the benefits available to full-time employees and had no assurance of recall; and (5) John, in fact, worked primarily during the Christmas peak season and stopped work thereafter. *See Seneca Foods Corp.,* 248 NLRB 1119 (1980); *See's Candy Shops, Inc.,* 202 NLRB 538 (1973); *United Foods, Inc.,* 174 NLRB 91 (1969). While other facts might tend to support the Regional Director's conclusion,[7] whether that conclusion is supported by substantial evidence is a question apart from whether Employer was entitled to a hearing on the underlying factual issue. We believe that Employer's allegations created a substantial and material issue of fact and that Employer is entitled to a hearing on that issue.

## IV.

■ During the past ten years, the Board has flip-flopped several times on the standard to be applied in determining whether an election should be set aside where the successful party has made a material misrepresentation during the campaign. Under *Hollywood Ceramics Co.,* 140 NLRB 221, 224 (1962), an election would be set aside where the misrepresentation "may reasonably be expected to have a significant impact on the election," and was made at a time when the other party could not make an effective reply. In 1977, the Board overruled *Hollywood Ceramics* to the extent that it permitted the setting aside of an election because of misleading campaign statements. *Shopping Kart Food Market,* 228 NLRB 1311 (1977). The *Hollywood Ceramics* test then was reinstated in *General Knit of California, Inc.,* 239 NLRB 619 (1978), but *General Knit* itself was overruled and the *Shopping Kart* test reinstated in *Midland Nat'l Life Ins. Co.,* 263 NLRB No. 24, 110 L.R.R.M. 1489 (1982). At present, the Board "will not set elections aside on the basis of misleading campaign statements," but "will ... intervene in cases where a party has used forged documents which render the voters unable to recognize propaganda for what it is." *Id.* at 1494.

*Midland* was decided subsequent to the Board's decision in this case and Employer would have us apply it prospectively only. Appellate courts, however, ordinarily apply the law in effect at the time of the appellate decision. *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Where, as here, there is an intervening change of agency policy, the central question is "whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act," and

---

**5.** Because we decide that a hearing should have been granted, we do not reach the question of whether this conclusion is supported by substantial evidence.

**6.** The dissent argues that this finding raises no separate issue of fact but depends on a legal conclusion alone—whether John was a part-time or seasonal employee. The question of what motivated Employer to call John to work, however, seems clearly to be a factual ques-

tion, the resolution of which leads to a legal conclusion concerning John's status at work.

**7.** We note, however, that employees have been held to be seasonal employees even though they worked sporadically outside the busy season, *NLRB v. Sandy's Stores, Inc.,* 398 F.2d 268 (1st Cir.1968), or performed the same duties as regular employees, *See's Candy Shops, Inc.,* 202 NLRB 538 (1973).

that question is committed, in the first instance, to the agency's sound discretion. *NLRB v. Food Store Employees Union,* 417 U.S. 1, 10, n. 10, 94 S.Ct. 2074, 2080, n. 10, 40 L.Ed.2d 612 (1974). The Board clearly has indicated that *Midland* should apply to this case. In *Midland,* the Board balanced the hardships imposed by retroactivity against the prospect of producing results contrary to the statutory design and determined that *Midland* would apply "to all pending cases in whatever stage." [8] *Midland,* 110 L.R.R.M. at 1494 n. 24. Indeed, the only hardship to employer is that, in reliance on the *Hollywood Ceramics/General Knit* standard, it refrained from making any misrepresentations of its own during the campaign. We thus join those other courts of appeals that have applied *Midland* retroactively. *See NLRB v. Monarch Boat Co.,* 713 F.2d 355 (8th Cir.1983); *NLRB v. Milwaukee Brush Mfg. Co.,* 705 F.2d 257 (7th Cir.1983); *NLRB v. Rolligon Corp.,* 702 F.2d 589 (5th Cir.1983).

Nevertheless, since Employer's objections were drawn under the *Hollywood Ceramics/General Knit* standard and no hearing was held on the misrepresentations issue, we cannot determine whether the alleged misrepresentations included the kind of forged document use discussed in *Midland.* Thus, on remand, Employer should be given the opportunity to amend its objections in light of the *Midland* standard. Furthermore, we decline to resolve Employer's challenge to the validity of the *Midland* standard. Given the incompleteness of the record before us, resolution of that challenge would be premature.[9]

## V.

For the foregoing reasons, the Board's order is vacated and the case is remanded to the Board for further proceedings.

VACATED AND REMANDED.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent.

I disagree with the pivotal point of the majority decision—that National Posters raised substantial issues of fact about Samuel John's employment status requiring a hearing by the Regional Director.

A post-election hearing undoubtedly must be conducted when the objecting party raises a "substantial and material issue of fact relating to the validity of a representation election." *Methodist Home v. NLRB, supra.* One cannot, however, raise a substantial issue of fact merely by questioning the interpretation of the Regional Director's findings. *Macomb Pottery Co. v. NLRB,* 376 F.2d 450, 453 (7th Cir.1967); *NLRB v. Sun Drug Co.,* 359 F.2d 408, 414 (3d Cir. 1966).

The Director carefully considered all the objective evidence before reaching a decision on John's employment status. He correctly credited John with working at least some hours in each month from June through December, 1981. He found that

---

**8.** This case is unlike *Cedar Coal Co. v. NLRB,* 678 F.2d 1197, 1199 (4th Cir.1982), where we declined to apply retroactively another Board decision because the Board had "not indicated its policy on retroactive application to earlier Board decisions which have been appealed." We read the "to all pending cases in whatever stage" statement to mean that the Board would apply *Midland* to earlier decisions that have been appealed, including this one.

**9.** Employer claims that it was entitled to a hearing on the misrepresentation issue. The Board affirmed the Regional Director's overruling, without a hearing, of Employer's objections 2–5 on the grounds that they failed to establish a *prima facie* case for setting aside the election under the *Hollywood Ceramics/General Knit* standard. On appeal, the Board does not argue that the objections did not warrant a hearing under the *Hollywood Ceramics/General Knit* standard. Rather, it argues that the *Midland* standard applies and since the objections contain no allegation of union use of forged documents, Employer failed to allege a *prima facie* case. Thus, no hearing was required. On remand, if the Board decides that the *Hollywood Ceramics/General Knit* standard should apply—although, as discussed above, we believe the Board clearly has indicated that *Midland* applies to this case— then Employer is entitled to a hearing on the misrepresentation issue. A central issue in the Union campaign was the level of employee benefits and Objections 2–4 contain allegations of material misrepresentations concerning benefits. Whether Employer is entitled to a hearing if the *Midland* standard is applied will depend on the allegations in the amended objections.

John was paid slightly less and received fewer benefits than his co-workers because he had only recently been employed. He found, however, that John worked shoulder to shoulder with full-time employees, performing the same job assignments and reporting to the same supervisors.

National Posters relies on the affidavit of Earl Seth, its president and sole owner, as sufficient to raise a substantial and material issue of fact as to whether John was a "part-time" or "seasonal" employee. Seth's affidavit essentially stated his subjective view that he had hired John in anticipation of increased seasonal work. The Regional Director, in rejecting this bare assertion, based his findings on uncontested documented evidence. In my mind, the entirely subjective intent of the employer under these circumstances is entitled to little weight. Specific and objective facts from company records were introduced into evidence and fully considered by the Regional Director. A single self-serving, and entirely subjective, impression simply does not have the probative force to create an issue of fact when measured against that evidence.

I have, moreover, a more fundamental difference with the majority opinion. It states: "the critical legal conclusion drawn by the Regional Director was that John was a part-time, and not a seasonal employee .... The conclusion is based on the Regional Director's factual finding that Employer's need for John's services was based on the periodic availability of work rather than on peak season demand. That finding, however, is a resolution of the material factual issue raised by Employer."

I suggest that my respected colleagues have not separately stated a legal conclusion and a factual finding upon which it was based; rather, they have simply taken the legal conclusion—that John was a part-time employee and recategorized it as a finding of fact under the cloak of factual terminology. The Director's findings of fact were that John worked a stated number of hours in each month, received a certain level of pay and benefits, and worked "shoulder to shoulder" with regular employees. The Director *concluded* from these facts that John's service was based on the periodic availability of work. This was, at least, an ultimate conclusion of fact from which only one conclusion of law was possible—that John was a part-time employee. To create an issue of fact under the circumstances of this case, National Posters must offer evidence, by affidavit or otherwise, contradicting the Director's factual findings as to hours worked, job assignments, and the conditions of his employment. Instead, it by affidavit merely disputed the inferences and conclusions drawn by the Regional Director from record facts. I feel the Board correctly rejected the contention that such a subjective impression created a substantial and material issue of fact. *Macomb Pottery Co. v. NLRB*, 376 F.2d 450, 453 (7th Cir.1967); *NLRB v. Sun Drug Co.*, 359 F.2d 408, 414 (3d Cir.1966).

I agree with the majority that the standard announced by the Board in *Midland* controls the misrepresentation issues, but since National Posters raised no *Midland* issues, I do not feel a remand is necessary.

I would enforce the Board's order.