NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

FRUEHAUF CORPORATION,
Respondent.

No. 83–4177.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1983.

Elliott Moore, Deputy Assoc. Gen. Counsel, Elinor Hadley Stillman, Collis Suzanne Stocking, Ann S.B. Jones, N.L.R.B., Washington, D.C., for petitioner.

Fuselier, Ott, McKee & Moeller, Emile C. Ott, Jeffrey A. Walker, Jackson, Miss., for respondent.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

The National Labor Relations Board (NLRB or the Board) has applied for enforcement of an order issued against Fruehauf Corporation (Fruehauf or the employer) requiring that it bargain with the representative certified by the Board over Fruehauf's objections. 265 N.L.R.B. No. 163 (1982). Fruehauf contends that the Board's certification of the union was improper because of alleged union misconduct during the campaign and because the Board acted on the basis of an inadequate record. We deny enforcement and remand the case to the Board for reconsideration on a full record.

## I. *Facts*

Fruehauf operates a plant in Shreveport, Louisiana. On September 2, 1980, no more than five days after its initial organizational meeting, the Truck Drivers and Helpers Union No. 568 (the union) [1] filed a representation petition seeking an election among employees of the service department at the Shreveport facility. A consent election among the 20 Fruehauf employees in the voting unit took place October 16, 1980: twelve voted for the union, six against, and two did not vote. Fruehauf filed its objections, alleging that the union and its supporters had threatened and harassed voters during the period before the election. The employer submitted no supporting evidence, nor did it even allege specific facts supporting its allegation. Instead, it included this statement in its objections:

> Because of the fear of reprisals by the Petitioner Union, we have chosen not to set forth the names of those threatened and harassed herein. We are prepared to furnish such information to a representative of the NLRB and request that you conduct a further investigation concerning Petitioner's conduct.

The Board's Acting Regional Director undertook an investigation of Fruehauf's objections. According to Fruehauf, it made available numerous employee witnesses, and the Board's investigation itself revealed numerous others, but the Acting Regional Director actually interviewed only three voters. The Board assures us in its brief that all witnesses presented by the employer as having knowledge of the alleged objectionable conduct were interviewed. Fruehauf now complains that the investigation "was 'ex parte' in every sense of that term."

The administrative investigation revealed partially conflicting evidence of at least three pre-election threats of violence. On August 27 or 28, 1980, at the union's pre-petition organizational meeting, Teamsters Business Agent Benny Goodwin allegedly told the gathered employees that workers who cross a picket line could get shot. Goodwin later denied making the statement, explaining to an investigator that he had spoken only of the general tensions and dangers on a picket line. On October 3, 1980, employee David Boothe approached two other employees and asked if they would walk the picket line in case of a strike. One of the other employees said he would not join the line because he had bills to pay and because of Goodwin's warning at the meeting. Boothe responded that Goodwin "could be right." Asked if that was a threat, Boothe said no. Conflicting evidence suggested that Boothe may have threatened an employee on another occasion as well—this time, in the presence of five or six other employees. One employee told the investigator he heard Boothe threaten to beat up an employee, but the threatened employee could not recall the threat. Finally, the Board's investigation also turned up accounts of an anonymous, threatening phone call to one employee and a statement by an unknown employee that voting for the union "may cost somebody's life." [2]

The Acting Regional Director made findings and recommended that Fruehauf's objections be overruled. He found that Goodwin's statement at the meeting, if it was made at all, "cannot serve as a basis for setting aside the election" because it occurred before the election petition was filed. Even if it were to be considered, he continued, Goodwin's statement was ambiguous: the union's business agent might have been understood as arguing against the union by referring to possible violence should the union win and eventually call a strike. Finally, he found the several other "threats" ambiguous or insubstantial.

---

1. The union is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

2. Other minor events were also revealed in the course of the investigation. One employee complained, for example, that someone put oil in his tool box on October 8, 1980, and grease in his shoes on October 21, 1980 (five days after the election).

Fruehauf's exceptions to the Acting Regional Director's report and its supporting brief presented two major contentions. First, it argued that the facts elicited during the investigation were themselves sufficient to require that the election be set aside or, at a minimum, that a hearing be held. According to Fruehauf, the director wrongly foreclosed consideration of Goodwin's pre-petition threat of violence and 'absurdly' concluded that the threat was ambiguous. Further, Fruehauf challenged the report's statement that the employer did not argue that Boothe acted as a union agent when he made his threats; the employer did indeed so contend. It argued that a threat by an unknown employee—that voting against the union could "cost somebody's life"—was clear, unambiguous, and obviously coercive. Finally, Fruehauf attacked the director's conclusion that certain misconduct could not be considered because the complaining employee could not say who committed the acts or why. The employer's second major contention was that the Acting Regional Director's investigation was inadequate. Fruehauf noted several points in the report at which the Acting Regional Director implicitly faulted the company for failing to present certain witnesses. It is incumbent upon a regional director to conduct a full investigation, according to Fruehauf, and the company did nothing to hinder such an effort. Indeed, argued Fruehauf, the Acting Regional Director never even stated in his report that he requested an interview with the witnesses whom the company assertedly failed to present.

Fruehauf had offered no documentation in support of its original objections, and included none with its exceptions. The Acting Regional Director apparently took a number of statements or affidavits of witnesses in the course of his investigation, but forwarded none of this material to the Board. Thus, the Board's "review" of the Acting Regional Director's recommendation was based entirely on the report and Fruehauf's exceptions and supporting brief.

A panel of the NLRB upheld the conclusion of the Acting Regional Director and adopted his findings in all but three respects. First, it "disavow[ed]" the finding that one of the anonymous threats did not intimidate the threatened employee. It cited its then recent decision in *The Denver Post, Inc.,* 245 N.L.R.B. No. 14 (1979), as having "established that proof of coercive effect is unnecessary" to a claim of election coercion. The panel found "no merit in this objection in any event because the alleged conversation was isolated and did not create a general atmosphere of fear and coercion which would render a fair election impossible." Second, it understood Fruehauf to contend that Boothe was a union agent, but "[found] no evidence to support" that conclusion. Finally, the panel responded to Fruehauf's argument that the Acting Regional Director failed to consider third party conduct with this statement: "We have examined all such evidence in this proceeding, including the alleged conduct of employee Boothe and anonymous third persons, and find that it did not create a general atmosphere of coercion and fear of reprisal for failing to vote for the Union which would warrant setting aside the election. *Cf. Steak House Meat Company, Inc.,* 206 N.L.R.B. 28 (1973)."

Despite these factual determinations, the panel noted but rejected Fruehauf's argument that the Acting Regional Director erred by not including in the record before the Board all affidavits and other evidence gathered during his investigation. Such material, according to the panel, is not a part of the record as defined by the Board's rules or by section 9(d) of the National Labor Relations Act, 29 U.S.C. § 159(d) (1976).[3]

In order to obtain review of the representation issues in this court, Fruehauf refused to bargain with the certified union. The

---

**3.** We note that the Board disposed of Fruehauf's exceptions several months before we issued our decision in *NLRB v. Klingler Electric Corp.,* 656 F.2d 76 (5th Cir.1981). *Cf. Kitchen*

*Fresh, Inc. v. NLRB,* 716 F.2d 351, 357 (6th Cir.1983) (noting Board's refusal to rule on complete record despite the holdings of courts of appeals).

Board's unfair labor practice proceeding and decision were routine except that the Board amended its disposition of Fruehauf's procedural argument that the record before the panel at the representation stage was inadequate. Citing its decision in *Summa Corp.*, 265 N.L.R.B. No. 46 (1982), the NLRB concluded that it was "entitled to rely on the Acting Regional Director's report" because Fruehauf failed to present any evidence in support of its exceptions. Additionally, the Board found that even if viewed in the light most favorable to Fruehauf, "the election objections raised no material issues of fact or law which would warrant setting aside the election results or directing a hearing .…" 265 N.L.R.B. No. 163, 112 L.R.R.M. at 1248. The NLRB now petitions for enforcement of its order compelling Fruehauf to bargain with its employees' certified representative.

## II. *The Incomplete Record*

We have interpreted those regulations of the Board in place during its consideration of this case to require that the regional director include in the record and forward to the Board all portions of affidavits or other documents that are relevant to the evidentiary basis of the regional director's decision and recommendation.[4] *NLRB v. Klingler Electric Corp.*, 656 F.2d 76 (5th Cir.1981). We agreed with the Sixth Circuit that to exclude such documents from the record before the Board would raise serious due process problems. *Id.* at 84; *see NLRB v. North Electric Co.*, 644 F.2d 580, 583 (6th Cir.1981). We also concluded in *Klingler* that, regardless of the Board's procedures, 28 U.S.C. § 2112(b) requires that this same material be part of the record before this court when it considers petitions for enforcement or review in cases of this kind. In decisions both before *Klingler* and since, our sister circuits have almost uniformly agreed that the record must contain all material relied upon by the regional director in making his initial recommenda-

tion. *E.g., NLRB v. Allis-Chalmers Corp.*, 680 F.2d 1166, 1167–69 (7th Cir.1982); *NLRB v. Consolidated Liberty, Inc.*, 672 F.2d 788, 789–90 (9th Cir.1982); *NLRB v. North Electric Co.*, 644 F.2d 580, 582–84 (6th Cir.1981); *NLRB v. Cambridge Wire Cloth Co.*, 622 F.2d 1195, 1197–99 (4th Cir. 1980); *Prestolite Wire Division v. NLRB*, 592 F.2d 302, 304–05 (6th Cir.1979). *Cf. NLRB v. Northeastern University*, 707 F.2d 15, 17–19 (1st Cir.1983) (indicating deference to Board's expressed need for confidentiality). The Acting Regional Director expressly relied in his report on the statements or affidavits of at least five witnesses, three employees and two managers. None of these statements have been reviewed by Fruehauf, none were before the Board, and none are in the record before us.

The Board's major argument is that Fruehauf lost the right to demand a complete record by failing to identify or submit with its exceptions specific evidence in conflict with the Acting Regional Director's findings. Unless the employer can refute those findings—sufficiently, perhaps, to entitle it to a hearing on the resulting factual issue—the Board insists that it may rely on the findings of its regional director without reviewing their evidentiary basis.

The courts of appeals have reached opposite conclusions when called upon to decide whether, in order to obtain remand, a party seeking to overturn an election must show that it was prejudiced by the inadequacy of the record before the Board. Some circuits have declined to remand for Board review on a complete record unless the objecting party, either by well pleaded exceptions or actual evidentiary showing, disputes before the Board the facts recited or relied on by the regional director. *See NLRB v. Knickerbocker Food, Inc.*, 715 F.2d 509, 512 (11th Cir.1983); *NLRB v. Eskimo Radiator Mfg. Co.*, 688 F.2d 1315, 1318 (9th Cir.1982); *NLRB v. Belcor, Inc.*, 652 F.2d 856, 859 (9th Cir.1981); *Reichart Furniture Co. v. NLRB*,

---

4. The NLRB has since amended the regulation to exclude from the record in cases in which no hearing was held the statements of witnesses relied upon by the regional director. 29 C.F.R. § 102.69(g)(1)(ii) (1983). *See Summa Corp.*, 265 N.L.R.B. No. 46 (1982). We do not apply and need not discuss problems with the validity of the amended regulation.

649 F.2d 397, 398 (6th Cir.1981); *Prestolite Wire,* 592 F.2d at 306–07. Other courts have expressed their willingness to remand whenever the Board presumes to review a regional director's decision without seeing evidence gathered by the regional director and relied upon in his report. *See Allis-Chalmers,* 680 F.2d at 1168–69; *North Electric,* 644 F.2d at 584; *Cambridge Wire,* 622 F.2d at 1197–98. Indeed, our decision in *Klingler* has been read to adhere to such a per se rule. *Allis-Chalmers,* 680 F.2d at 1169.

One challenging a representation election unquestionably has a right to review by the NLRB of a regional director's decision upholding the election. Section 3(b) of the National Labor Relations Act, as amended, authorizes the Board to delegate to its regional directors its power to "certify the results" of an election, and allows but does not by terms require the Board to review its regional directors' exercise of that delegated power. 29 U.S.C. § 153(b) (1976); *see Magnesium Casting Co. v. NLRB,* 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735 (1971) (delegation of power to determine appropriate bargaining unit). The Board has by regulation extended to one objecting to an election the right to have those objections reviewed by the Board, 29 C.F.R. § 102.69; *North Electric,* 644 F.2d at 583, and the right to review is the right to effective review.

We held in *Klingler* that the federal statute, the Board's regulations, and perhaps principles of due process as well, require that the record on review before the Board or on petition in our court contain those affidavits and other documents relied upon by the regional director. We explicitly rejected the Board's argument that such material need be in the record only in cases in which the objecting party makes allegations justifying a hearing. 656 F.2d at 84 n. 9. *Cf. Birmingham Ornamental Iron Co. v. NLRB,* 615 F.2d 661, 665–67 (5th Cir.1980) (declining to reach adequacy of record because employer raised no material issue of fact in its exceptions to the regional director's report). But while we may consider it much the better practice for the Board to rule on a complete record, we have never held that a remand will follow in every case in which that preferred practice is not followed. *Klingler* itself indicates that no remand is necessary when the omitted material cannot have afforded even "the slightest basis for a different action by the Board." *Id.*

■ Allegation or demonstration of facts conflicting with the regional director's findings must obviously be considered by the Board on a full record. But open factual dispute, that is, where conflicting evidence is presented by the objecting party, is not the only circumstance in which the Board must review the facts that were before its regional director. We hold that the Board must have before it on review all witness statements, affidavits, and other documentary material relevant to the evidentiary basis of the regional director's decision in every case in which the party challenging the election includes in its exception to the findings of the director arguments of law or allegations of fact, whether related to the investigation of the party or of the director, that by their nature call upon the Board to revisit the regional director's findings or to make findings de novo.

■ Fruehauf's exceptions and supporting brief set out no specific facts contrary to the evidence upon which the Acting Regional Director made his findings. The Company did assert arguments, however, that even the Board understood to require factual review. Fruehauf corrected the Acting Regional Director's misunderstanding of its position as to Boothe's status as a union representative; without reviewing the affidavits, the Board found "no evidence to support the conclusion that Boothe acted as an agent" of the union. Fruehauf argued that anonymous threats and harassment should have been considered; without reviewing the evidence, the Board "disavowed" the Acting Regional Director's finding that one such instance had no coercive effect, but found on its own that the threat was "isolated" and did not "create" an overly coercive atmosphere. Finally, Fruehauf

argued that the Acting Regional Director should have considered "third party conduct" (conduct not attributable to the union) as contributing to the coercive atmosphere; with none of the affidavits in the record, the Board professed to have "examined all such evidence in this proceeding" and to have found no atmosphere of fear and coercion. Thus, Fruehauf clearly called upon the Board to revisit the Acting Regional Director's findings or to make findings de novo.

The Board argues that Fruehauf waived its right to complain of the inadequacy of the record by failing to seek an order in this court directing submission of the affidavits under seal. Remand to the Board was unnecessary in *Klingler* because, upon reviewing the affidavits collected by the regional director in that case, we found that none contained information "that would add weight to Klinger's case or stand the slightest chance of affecting the Board's action." 656 F.2d at 85. Other courts have followed the same course. *E.g., Daylight Grocery Co. v. NLRB,* 678 F.2d 905, 911 (11th Cir. 1982). Fruehauf's right is to adequate review before the Board, and it does not waive that right by failing to seek a court order compelling the NLRB to comply with the requirements of our prior decisions. *Klingler, supra.* This case must be remanded for reconsideration by the Board on a full record.

We DENY the Board's petition for enforcement, set aside the certification, and REMAND for reconsideration by the Board on a complete record.